Patrick Q. Hustead, #6-2864
The Hustead Law Firm,
 *A Professional Corporation*
4643 S. Ulster St., Suite 1250
Denver, CO  80237
Ph. 303-721-5000
pqh@thlf.com
Attorneys for Plaintiff,
Westchester Fire Insurance Company,

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 FEB 26  PM 1:52

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| WESTCHESTER FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. |
| | ) | |
| INTERIOR PARTITIONS, INC.; | ) | 18-CV-34-S |
| RAMSHORN PROPERTY MANAGEMENT, LLC; and | ) | |
| TODD R. MADSEN, individually; | ) | |
| MARY K. MADSEN, individually; | ) | |
| STEVEN C. MADSEN, individually; | ) | |
| NANCI K. MADSEN, individually; | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Westchester Fire Insurance Company ("Plaintiff" or "Surety"), through its undersigned counsel, submits its *Complaint* against Defendants, Interior Partitions, Inc., Ramshorn Property Management, LLC, and Todd R. Madsen, Mary K. Madsen, Steven C. Madsen, and Nanci K. Madsen, individually (collectively "Defendants").

### A.    **PARTIES**

1.    Plaintiff, Westchester Fire Insurance Company, is a Pennsylvania corporation, authorized to conduct business in the State of Wyoming, with its principal offices located at 436 Walnut Street, Philadelphia, PA 19106.

2.      Defendant, Interior Partitions, Inc. ("IPI"), is a Wyoming corporation, with its principal offices located at 7632 6 WN Road, Casper, WY 82604.

3.      Defendant, Ramshorn Property Management, LLC, is a Wyoming limited liability company, with its principal offices located at 7632 6 WN Road, Casper, WY 82604.

4.      Upon information and belief, Defendant, Todd R. Madsen, is a resident of Wyoming with a residential address of 1440 N Grass Creek Road, Casper, WY 82604.

5.      Upon information and belief, Defendant, Mary K. Madsen, is a resident of Wyoming with a residential address of 1440 N Grass Creek Road, Casper, WY 82604.

6.      Upon information and belief, Defendant, Steven C. Madsen, is a resident of Wyoming with a residential address of 3966 W 38th, Casper, WY 82604.

7.      Upon information and belief, Defendant, Nanci K. Madsen, is a resident of Wyoming with a residential address of 3966 W 38th, Casper, WY 82604.

## B.      JURISDICTION/VENUE

8.      This Court has personal jurisdiction over Defendants in this action, because Defendants reside in Wyoming.

9.      The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity), because the amount of Plaintiff's claims against Defendants exceeds $75,000, and Plaintiff is a citizen of a different state than Defendants.

10.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), because Defendants reside in this District.

## C.      GENERAL ALLEGATIONS

11.      On or about September 13, 2016, IPI entered into a Subcontract with Sletten Construction of Wyoming, Inc. ("Sletten"), later amended by subsequent modifications and change orders, under which IPI agreed to furnish certain labor and material and perform work on a construction project in Laramie, Wyoming known as University of Wyoming Arena Auditorium – Phase II (the "Project").

12.      On or about September 13, 2016, 2016, Plaintiff, as surety, issued a Subcontract Performance Bond and a Subcontractor Labor and Material Payment Bond, under Bond No. KO9532754, with a penal amount of $643,000 (the "Bonds") on behalf of IPI, as principal, and in favor of Sletten, as obligee. A copy of the Bonds is attached hereto and incorporated by reference as **Exhibit A.**

13.      As consideration for Plaintiff issuing the Bonds and other bonds, and for other consideration, on or about September 24, 2010, Interior Partitions, Inc. and Todd R. Madsen,

Mary K. Madsen, Steven C. Madsen, and Nanci K. Madsen each executed an Agreement of Indemnity in favor of Plaintiff.

14.    As consideration for Plaintiff issuing the Bonds and other bonds, and for other consideration, on or about September 12, 2016, Interior Partitions, Inc., Todd R. Madsen, Mary K. Madsen, Steven C. Madsen, and Nanci K. Madsen, and Ramshorn Property Management, LLC each executed an additional Agreement of Indemnity in favor of Plaintiff.

15.    As consideration for Plaintiff issuing the Bonds and other bonds, and for other consideration, on or about September 29, 2016, Interior Partitions, Inc., Todd R. Madsen, Mary K. Madsen, Steven C. Madsen, and Nanci K. Madsen, and Ramshorn Property Management, LLC each executed an additional Agreement of Indemnity in favor of Plaintiff.    (The Agreements of Indemnity dated September 24, 2010, September 12, 2016, and September 29, 2016 are collectively referred to hereafter as the "Indemnity Agreements").    A copy of the Indemnity Agreements is attached hereto and incorporated by reference as **Exhibit B**.

16.    Pursuant to the Indemnity Agreements, the Defendants agreed:

(Defendants) shall exonerate, hold harmless, indemnify and keep indemnified (Plaintiff) from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which (Plaintiff) may sustain or incur by reason of or in consequence of the:

    A.    Execution or procurement of the execution of (the Bonds);
    B.    Failure by (Defendants) to perform or comply with any of the covenants or conditions of (the Indemnity Agreements);
    C.    Any (default under the Indemnity Agreements);
    D.    Enforcement of any covenant of (the Indemnity Agreements);
    E.    Performance of any investigation, attempt or attainment of any release in connection with any (the Bonds) or any loss or unpaid premium in connection with any (the Bonds);
    F.    Prosecution or defense of any action or claim in connection with (the Bonds)...; and
    G.    Attempt to recover losses or expenses paid or incurred in connection (the Indemnity Agreements or the Bonds).

Ex. B at pg. 2, ¶3.

17.    Pursuant to the Indemnity Agreements, the Defendants agreed:

In the event of payment by (Plaintiff)...[v]ouchers or other evidence of any such payments made by (Plaintiff) shall be prima facie evidence of the fact and amount of liability to (Plaintiff). (Defendants) shall pay to (Plaintiff) interest on all

disbursements made by (Plaintiff) at the maximum rate permitted by law calculated from the date of each disbursement.

Ex. B at pg. 2, ¶3.

18.    Pursuant to the Indemnity Agreements, the Defendants agreed:

(Defendants) will furnish (Plaintiff) such information as it may request from time to time concerning the financial condition of (Defendants), the status of work under (the Project), and/or the payment of obligations in connection therewith.

At any time during (the Indemnity Agreements) and until such time as the liability of (Plaintiff) under (the Bonds) is terminated and (Plaintiff) is fully reimbursed all amounts due under (the Indemnity Agreements), (Plaintiff) shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of (Defendants), wherever located, for the purpose of inspection, copying or reproduction. Any financial institution, depository, warehouse, supply house, or other person, firm or corporation, when requested by (Plaintiff), is hereby authorized and required to furnish (Plaintiff) any and all information requested including, but not limited to: (i) the status of the work under (the Project) being performed by (IPI); (ii) the condition of performance of (the Project); (iii) payments or pending payments of accounts including undisbursed loan proceeds; and (iv) full information about all bank accounts and loans and any collateral deposited in connection therewith. Upon (Plaintiff's) request, (Defendants) shall immediately deliver to (Plaintiff), or its designee, at a time and place and in a manner determined by (Plaintiff), such books, records, accounts, documents, computer software and other computer stored information, and contracts in whatever form, as and when requested by (Plaintiff).

Ex. B at pg. 4, ¶15-16.

19.    Disputes arose between Sletten and IPI regarding the quality and timeliness of IPI's performance of its work on the Project.

20.    Ultimately, portions of IPI's work on the Project were defective and had to be re-worked.

21.    Further, IPI's defective work caused subsequent property damage to other work at the Project.

22.    Specifically, IPI improperly installed a screen wall by using the wrong materials and also failing to attach the screen wall to the metal studs of the building at the Project. Instead, IPI improperly attached the screen wall to existing drywall, which caused damage to the drywall and associated framing members. As a result, the screen wall needed to be removed and re-attached to the metal studs, and repairs needed to be made to the damaged drywall and framing.

23.     Further, IPI improperly installed exterior framing at the Project.  Specifically, IPI did not properly install a track system on metal framing, which Sletten alleged caused differential movement in the building and damage to the structural steel inside the building at the Project, both of which required repair.

24.     On May 5, 2017, Sletten issued a notice of default regarding IPI's performance of its work on the Project.

25.     Plaintiff has incurred damages related to the Bonds and IPI's work on the Project.

26.     On October 10, 2017, Plaintiff, IPI, and Sletten entered into a Settlement Agreement, Assignment, and Mutual Release ("Settlement Agreement"), which resolved Sletten's claims under the Bonds.

27.     Pursuant to the terms of the Settlement Agreement, Plaintiff paid Sletten $85,000 in satisfaction of Sletten's claims under the Bonds.

28.     Plaintiff also incurred attorney's fees, costs, and expenses related to investigating, defending, and settling the claims asserted by Sletten under the Bonds and in pursuing reimbursement for such amounts from Defendants.  Plaintiff's attorney's fees, costs, and expenses are presently ongoing.

29.     Pursuant to the terms of the Indemnity Agreements, Plaintiff has demanded indemnification from Defendants for all losses Plaintiff has incurred as a result of issuing the Bonds, including, but not limited to, bond payments, attorney's fees, costs, and expenses.

30.     In addition, Plaintiff has also informed IPI that its defective work on the Project resulted in subsequent property damage.

31.     Despite their obligations to satisfy Plaintiff's demands, the Defendants have failed to do so, which has and continues to cause significant and irreparable harm to Plaintiff.

32.     All conditions precedent to bringing and maintaining this action have been met or have occurred.

### FIRST CLAIM FOR RELIEF
### (Breach of Express Contract against All Defendants)

33.     Plaintiff hereby incorporates by reference all the allegations contained above as though fully set forth herein.

34.     Defendants entered into a valid and enforceable contract, the Indemnity Agreements, with Plaintiff.

35.     Plaintiff has substantially performed its obligations under the Indemnity Agreements.

36.    Under the clear, express and unambiguous terms of the Indemnity Agreements, the Defendants are each required to:

[E]xonerate, hold harmless, indemnify and keep indemnified (Plaintiff) from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which (Plaintiff) may sustain or incur by reason of or in consequence of the:

    A.    Execution or procurement of the execution of (the Bonds);
    B.    Failure by (Defendants) to perform or comply with any of the covenants or conditions of (the Indemnity Agreements);
    C.    Any (default under the Indemnity Agreements);
    D.    Enforcement of any covenant of (the Indemnity Agreements);
    E.    Performance of any investigation, attempt or attainment of any release in connection with any (the Bonds) or any loss or unpaid premium in connection with any (the Bonds);
    F.    Prosecution or defense of any action or claim in connection with (the Bonds)…; and
    G.    Attempt to recover losses or expenses paid or incurred in connection (the Indemnity Agreements or the Bonds).

Ex. B at pg. 2, ¶3.

37.    Plaintiff has made demand upon Defendants to be indemnified, reimbursed, and placed in funds pursuant to the Indemnity Agreements.

38.    Each of the Defendants has failed to meet his, her or its obligations under the Indemnity Agreements, which constitutes a material breach of the Indemnity Agreements.

39.    The Defendants' individual and collective breach of the Indemnity Agreements has damaged Plaintiff, and the Defendants are jointly and severally liable to Plaintiff for all losses and expenses incurred by Plaintiff as a result of same, including, but not limited to, interest, attorney's fees, and costs, all as provided by the terms of the Indemnity Agreements and prevailing law.

### SECOND CLAIM FOR RELIEF
### (Common Law Indemnification against IPI)

40.    Plaintiff hereby incorporates by reference all the allegations contained above as though fully set forth herein.

41.    IPI, as the principal under the Bonds, is required to indemnify and hold harmless Plaintiff from and against any and all liabilities, losses and expenses of whatsoever kind or

nature, including, but not limited to, interest, court costs, expenses and attorney fees, imposed upon, sustained or incurred by Plaintiff on account of the issuance of the Bonds.

42.    Plaintiff has made demand upon IPI to be indemnified and placed in funds for all losses sustained or to be sustained as a result of the issuance of the Bonds.

43.    IPI has failed to meet its obligations to Plaintiff.

44.    IPI's failure to meet its obligations to Plaintiff has damaged Plaintiff, and Plaintiff is entitled to damages as a consequence thereof.

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against each of the Defendants, jointly and severally, as follows:

- For all losses, expenses, costs and attorney's fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by Plaintiff as a result of the issuance of the Bonds;

- For preliminary and permanent injunctive relief requiring the Defendants to place Plaintiff in funds by money, property, liens or security interests in real or personal property, as determined by Plaintiff, and restraining each of the Defendants from transferring, disposing or otherwise liquidating any property owned by the Defendants, or any of them, real or personal, beyond reasonable living expenses, until Plaintiff is fully reimbursed for all of its losses, expenses, costs and attorney's fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred as a result of the issuance of the Bonds;

- For a security interest to be granted in favor of Plaintiff on any and all rights, title and interest of the Defendants in and to IPI's accounts receivable, securities, rents, proceeds of sale, chattel paper, letters of credit, tax refunds, inventory and general intangibles; policies of insurance; and intellectual property; and

- For costs, interest, and such other and further relief as the Court deems just and proper.

7

Respectfully submitted this 21st day of February, 2018.

THE HUSTEAD LAW FIRM
*A Professional Corporation*

/s/ Patrick Q. Hustead
Patrick Q. Hustead, Esq.   No. 6-2864
THE HUSTEAD LAW FIRM,
*A Professional Corporation*
4643 South Ulster Street, Suite 1250
Denver, Colorado 80237
Telephone: (303) 721-5000
Fax:  (303) 721-5001
Email:  PQH@thlf.com
*Attorneys for Plaintiff Westchester*
*Fire Insurance Company*

**EXHIBIT**

**A**
___

**SUBCONTRACT PERFORMANCE BOND**
**Westchester Fire Insurance Company**

BOND NUMBER: <u>KO9532754</u>

**KNOW ALL MEN BY THESE PRESENTS:**
That we <u>Interior Partitions, Inc.</u>        <u>7362 6WN Road, Casper, WY 82604</u>
(insert full name and address or legal title of Principal)

As Principal, (hereinafter called Principal), and Westchester Fire Insurance Company, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania as Surety, (hereinafter called Surety), are held and firmly bound unto <u>Sletten Construction of Wyoming, Inc.        PO Box  2630,  Cody, WY  82414</u>
(Insert full name and address or legal title of Obligee)

As Obligee, (hereinafter called Obligee), In the amount of <u>Six Hundred Forty Three Thousand Dollars and 00/100</u>
Dollars ($ <u>643,000.00</u>        ) for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal has by written agreement dated        <u>September 13, 2016</u>
entered into a subcontract with Obligee for  <u>University of Wyoming Arena Auditorium - Phase II</u>

In accordance with drawings and specifications prepared by _____
which subcontract is by reference made a part hereof, and is hereinafter referred to as the Subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly and faithfully perform said Subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

Whenever Principal shall be, and declared by Obligee to be in default under the Subcontract, the Obligee having performed Obligee's obligations thereunder.
(1)    Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or:
(2)    Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;
(3)    The balance of the subcontract price as defined below, shall be credited against the reasonable cost of completing performance of the subcontract.  If completed by the Obligee, and the reasonable costs exceeds the balance of the subcontract price, the Surety shall pay to the Obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this bond.  If the Surety arranges completion or remedies the default, that portion of the balance of the subcontract price as may be required to complete the subcontract or remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the manner as sums would have been payable to Principal had there had been no default under the subcontract. The term "balance of the subcontract price," as used in this paragraph, shall mean the total amount payable by Obligee to Principal under the subcontract and any amendments thereto, less the amounts heretofore properly paid by Obligee under the subcontract.

Any suit under this bond must be instituted before the expiration of one (1) year from the date on which final payment under the subcontract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the obligee named herein or the heirs, executors, administrators or successors of the Obligee.

Signed and sealed this  <u>13th</u>   day of  <u>September</u>        , <u>2016</u>

<u>Interior Partitions, Inc.</u>
Principal

By: _____

WESTCHESTER FIRE INSURANCE COMPANY

By: _____
     James Patrick Allen                Attorney-In-Fact

_Wendy Elmer_
Witness

Witness

**SUBCONTRACTOR LABOR AND MATERIAL PAYMENT BOND**
**Westchester Fire Insurance Company**                    BOND NUMBER: K09532754

**KNOW ALL MEN BY THESE PRESENTS:**
That we, Interior Partitions, Inc.                    7362 6WN Road, Casper, WY 82604
(here insert the name and address, or legal title of the Subcontractor)

hereinafter called Principal, and, Westchester Fire Insurance Company, a Pennsylvania corporation, 436 Walnut Street, Philadelphia, Pennsylvania 19106 as Surety, hereinafter called Surety, are held and firmly bond unto Sletten Construction of Wyoming, Inc.
Sletten Construction of Wyoming, Inc.          PO Box 2630, Cody, WY 82414
(here insert the name and address, or legal title of the General Contractor)

as Obligee, hereinafter called Obligee, for the use and benefit of claimants as herein below defined, in the amount of
Six Hundred Forty Three Thousand Dollars and 00/100                    Dollars ($ 643,000.00          )
for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated ___September 13, 2016___ entered into a Subcontract with obligee for
University of Wyoming Arena Auditorium - Phase II
which Subcontract is by reference made a part hereof, and is hereinafter referred to as the Subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

(1)    A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental or equipment directly applicable to the Subcontract.

(2)    The above named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.  The Obligee shall not be liable for the payment of any costs or expenses of any such suit.

(3)    No suit or action shall be commenced hereunder by any claimant:
   (a)    After the expiration of one (1) year following the date on which Principal ceased work on said Subcontract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.
   (b)    Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

(4)    The amount of this bond shall be reduced by and to the extent of any payments or payments made in good faith hereunder.

Signed and sealed this __13th__ day of _____September_____, 2016 .

|  | Interior Partitions, Inc. |
|  | Principal |
|  | By: _____ (SEAL) |
| _____ |  |
| Witness | WESTCHESTER FIRE INSURANCE COMPANY |
| *Wendy Elmer* | By: _____ |
| Witness | James Patrick Allen          Attorney-in- |

This bond is issued simultaneously with another bond in favor of the general contractor conditioned for the full and faithful performance of the contract.

# Power of Attorney

Bond No. KO9532754

## Westchester Fire Insurance Company

Know all men by these presents: That WESTCHESTER FIRE INSURANCE COMPANY, a corporation of the Commonwealth of Pennsylvania pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into the ordinary course of business (each a "Written Commitment"):

(1) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2) Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such person's written appointment as such attorney-in-fact.

(3) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4) Each of the Chairman, the President and Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitments of the Company as are specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5) The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested."

Does hereby nominate, constitute and appoint       James Patrick Allen       of the City of (       Casper       ),(       WY       ), each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Twenty Five Million Dollars & Zero Cents ($25,000,000.00) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the Corporate seal of the said WESTCHESTER FIRE INSURANCE COMPANY this    8th    day of       December       2015    .

WESTCHESTER FIRE INSURANCE COMPANY



_Stephen M. Haney_
Stephen M. Haney , Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA        ss.
    On this    8th    day of       December       , AD,    2015    before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney , Vice-President of the WESTCHESTER FIRE INSURANCE COMPANY to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 25, 2018

_Karen E. Brandt_
Notary Public

I, the undersigned Assistant Secretary of the WESTCHESTER FIRE INSURANCE COMPANY, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this    13th    day of    September    2016    .



_William L. Kelly_
William L. Kelly, Assistant Secretary

EXHIBIT

B



## AGREEMENT OF INDEMNITY

This Agreement of Indemnity ("AGREEMENT"), is made and entered into by the following individuals, partnerships and/or corporations
**INTERIOR PARTITIONS, INC.**

as PRINCIPAL(s) and

| INDEMNITOR(s) | Social Security or EIN Number | Mailing Address |
|---|---|---|
| INTERIOR PARTITIONS, INC. | | 7362 6WN ROAD, CASPER, WY 82604 |
| TODD R. MADSEN | | 1440 N GRASS CREEK RD., CASPER, WY 82604 |
| MARY K. MADSEN | | 1440 N GRASS CREEK RD., CASPER, WY 82604 |
| STEVEN G. MADSEN | | 3966 W 38TH, CASPER, WY 82604 |
| NANCY K. MADSEN | | 3966 W 38TH, CASPER, WY 82604 |

as INDEMNITOR(s) and Westchester Fire Insurance Company, as SURETY.

### WITNESSETH

WHEREAS, PRINCIPAL(s), in the performance of contracts and the fulfillment of obligations generally, whether solely in its own name or as co-venturer with others, may desire, or be required to give or procure certain BOND(s), and to renew, or continue or substitute the same from time to time with the same or different BOND amounts, and/or conditions or to refrain from canceling said BOND(s);

WHEREAS, at the request of PRINCIPAL(s) and/or INDEMNITOR(s) or both and upon the express understanding that this AGREEMENT should be given, SURETY has executed or caused to be executed, and may from time to time hereafter execute or cause to be executed, said BOND(s) on behalf of the PRINCIPAL(s);

WHEREAS, PRINCIPAL(s) and INDEMNITOR(s) have a substantial, material and beneficial interest in the obtaining, renewing, continuing or substituting of BOND(s); and

WHEREAS, SURETY has relied upon and will continue to rely upon the representations of PRINCIPAL(s) and INDEMNITOR(s) as to their character, identity, control, beneficial and legal ownership, financial condition and existence in procuring or executing BOND(s).

NOW THEREFORE, in consideration of the above stated premises, and of other good and valuable consideration, the receipt of which is hereby acknowledged, PRINCIPAL(s) and INDEMNITOR(s) for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with SURETY, its successors and assigns, as follows:

### DEFINITIONS

**FIRST:** Where they appear in this AGREEMENT and any addenda hereto, the following terms are defined as set forth in this paragraph:

"BOND(s)" means an undertaking or a contract of suretyship, guaranty or indemnity, or an agreement, consent or letter to provide such an undertaking or contract, and the continuation, extension, alteration, renewal or substitution of such an undertaking, contract, agreement, consent or letter, whether with the same or different amounts or conditions, executed or procured by SURETY before or after the date of this AGREEMENT (excluding at the option of SURETY any BOND(s) which are written by SURETY in reliance upon another valid and enforceable agreement of indemnity in favor of SURETY).

"CONTRACT(s)" means an agreement executed between PRINCIPAL(s) and a third party, together with all associated documents (including, but not limited to, general and special conditions, specifications and drawings) or an undertaking made, obligation or duty assumed, either statutory or otherwise, for which SURETY executes or procures the execution of a BOND(s).

"EVENT OF DEFAULT" means any one or more of the following:

    A.   Any notice of default by an obligee on any BOND(s) due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any CONTRACT or obligation contained therein or in the BOND(s) itself, whether actual or alleged;

    B.   Any failure, delay, refusal or inability of PRINCIPAL(s) to pay claims, bills or other indebtedness incurred in, or in connection with the performance of any CONTRACT;

    C.   The failure to perform, or comply with the terms, covenants or obligations in this AGREEMENT;

    D.   The failure to pay or discharge, when due, all indebtedness of PRINCIPAL(s) and/or INDEMNITOR(s) to SURETY;

    E.   An assignment by PRINCIPAL(s) for the benefit of creditors, or the appointment or an application by PRINCIPAL(s) for the appointment of a receiver or trustee for PRINCIPAL(s) or its property, solvent or not, or if proceedings for the appointment of a receiver or trustee for liquidation, reorganization or arrangement of PRINCIPAL(s) shall be initiated by others;

    F.   If PRINCIPAL or INDEMNITOR is an individual, the death, disappearance, declaration of incompetence, conviction of a felony, imprisonment, or, if PRINCIPAL(s) and/or INDEMNITOR(s) is not an individual, any change in character, identity, control, arrangement, legal or beneficial ownership or existence of such PRINCIPAL(s) and/or INDEMNITOR(s);

    G.   Any proceeding or the exercise of any rights by any individual or entity which deprives or impairs the PRINCIPAL's use of its plant, machinery, equipment, plan, drawings, tools, supplies or materials;

Contract Indemnity Form (Ed: 05/01/95)

H. In the event that CONTRACT(s), or any portion thereof, relates to the development of real property or construction of improvements upon real property: (i) the failure of PRINCIPAL(s) to pay for labor and materials ordered or used in connection with such development or construction of improvements; (ii) the diversion or non-use by PRINCIPAL(s) of loan funds, equity funds or materials intended by any lender, equity contributor or supplier of such funds or materials to be used and which are needed to perform the CONTRACT(s); or (iii) the voluntary or involuntary cessation or suspension of work required to be performed by PRINCIPAL(s) in connection with the CONTRACT(s);

I. The failure of PRINCIPAL(s), INDEMNITOR(s) to promptly furnish accurate, complete and current financial statements upon request of SURETY or the furnishing of a financial statement which contains any material misstatement or misrepresentation whether intentional or unintentional;

J. Any suspension, revocation or other material adverse change in the status of any license or PERMIT of PRINCIPAL(s) with any applicable licensing board or agency that is required to perform the CONTRACT(s) or discharge any obligation under any BOND(s); and

K. The occurrence of any event other than specified in A. through J. herein which, in the SURETY's sole opinion, may expose SURETY to loss, cost or expense including, but not limited to, a material adverse change in the financial condition of the PRINCIPAL(s) and/or INDEMNITOR(s).

"PRINCIPAL(s)" means any individual or entity for which SURETY executes BOND(s) including any one, combination of, or all of the named individuals, partnerships, or firms or corporation set forth above, any of their present or future subsidiaries, affiliates, whether a corporation, partnership or other entity, their successors in interest, whether acting alone or in joint venture with others not named herein, including any such individual or entity for which SURETY executes BOND(s) or any unrelated individual or entity for which SURETY executes BOND(s) at the request of any INDEMNITOR(s).

"SURETY" means Westchester Fire Insurance Company and its successors, assigns, affiliates, associates and subsidiary companies.

## NOTICE TO SURETY OF ANTICIPATED CHANGE IN NATURE OF PRINCIPAL(s)/INDEMNITOR(s)

**SECOND:** Written notice must be given by PRINCIPAL(s) and/or INDEMNITOR(s) at the earliest practical time of any anticipated change or negotiations entered into by PRINCIPAL(s) or INDEMNITOR(s) for any anticipated change in the character or identity of PRINCIPAL(s) or INDEMNITOR(s), or of a change of 5% or more in the beneficial or legal ownership of the stock of PRINCIPAL(s) and/or INDEMNITOR(s). Upon receipt of said notice, SURETY shall have the right to examine the books and records and other documents and information pursuant to the Sixteenth paragraph hereof.

## INDEMNITY AND HOLD HARMLESS

**THIRD:** PRINCIPAL(s) and INDEMNITOR(s) shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which SURETY may sustain or incur by reason of or in consequence of the:

A. Execution or procurement of the execution of BOND(s);

B. Failure by PRINCIPAL(s) or INDEMNITOR(s) to perform or comply with any of the covenants or conditions of this AGREEMENT;

C. Any Event of Default herein;

D. Enforcement of any covenant of this AGREEMENT;

E. Performance of any investigation, attempt or attainment of any release in connection with any BOND(s) or any loss or unpaid premium in connection with any BOND(s);

F. Prosecution or defense of any action or claim in connection with any BOND(s), whether SURETY, at its own discretion, elects to employ counsel of its own selection or permits or requires PRINCIPAL(s) or INDEMNITOR(s) to make arrangements for SURETY's legal representation; and

G. Attempt to recover losses or expenses paid or incurred in connection with this AGREEMENT, CONTRACT(s) and/or BOND(s).

Payment shall be made to SURETY by the PRINCIPAL(s) and/or INDEMNITOR(s) as soon as liability exists or is asserted against SURETY, whether or not SURETY shall have made any payment therefore. Such payment shall be equal to whatever amount SURETY, in its judgment, shall deem sufficient to protect it from loss. SURETY shall have the right to use the payment or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT.

In the event of payment by SURETY, SURETY shall be entitled in any accounting with PRINCIPAL(s) or INDEMNITOR(s) to reimbursement for any and all disbursements made by it in good faith in and about the matters contemplated by this AGREEMENT under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of any such payments made by SURETY shall be prima facie evidence of the fact and amount of liability to SURETY. PRINCIPAL(s) and INDEMNITOR(s) shall pay to SURETY interest on all disbursements made by SURETY at the maximum rate permitted by law calculated from the date of each disbursement.

## RESERVE-DEPOSIT

**FOURTH:** If for any reason the SURETY shall deem it necessary to establish or to increase a reserve to cover any possible liability or loss for which the PRINCIPAL(s) and INDEMNITOR(s) will be obligated to indemnify SURETY under the terms of this AGREEMENT, PRINCIPAL(s) and INDEMNITOR(s) will deposit with SURETY, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to SURETY for such liability or loss.

SURETY shall have the right to use such deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT. SURETY shall have no obligation to invest, or to provide a return on the deposit. PRINCIPAL(s) and INDEMNITOR(S) shall be entitled to the return of any unused portion of the deposit upon termination of the liability of SURETY on the BOND(s) and the performance by PRINCIPAL(s) and INDEMNITOR(s) under the terms of this AGREEMENT.

SURETY's demand shall be sufficient if sent by REGISTERED or CERTIFIED MAIL to the PRINCIPAL(s) and INDEMNITOR(s) at the addresses stated herein, or at the addresses last known to SURETY, whether or not such demand is actually received.

## ADVANCES

**FIFTH:** INDEMNITOR(s) hereby authorize and empower SURETY, within SURETY's sole discretion, to guarantee loans, extend SURETY credit, advance, or to lend PRINCIPAL(s) any money, which SURETY may see fit for the purpose of completing CONTRACT(s) or discharging obligations under BOND(s) including such overhead as might be necessary and all such guarantee, credit, advances or loans as well as all costs and expenses incurred by SURETY in relation thereto shall be presumed to be a loss for which PRINCIPAL(s) and INDEMNITOR(s) shall be responsible under this AGREEMENT, notwithstanding that said money or any part thereof should not be used by PRINCIPAL(s).

Contract Indemnity Form (Ed: 05/01/06)

## TRUST FUND

**SIXTH:** All payments received for or on account of any CONTRACT(s) shall be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any CONTRACT(s) and for labor, materials, and services furnished in the prosecution of the work under any CONTRACT(s) or any extensions or modifications thereto. All monies due and to become due under any CONTRACT(s) are also trust funds, whether in the possession of PRINCIPAL(s), INDEMNITOR(s) or otherwise. The trust funds shall be for the benefit and payment of all obligations for which SURETY may be liable under any BOND(s). The trust funds shall inure to the benefit of SURETY for any liability or loss it may have or sustain under any BOND(s), and this AGREEMENT and declaration constitutes notice of such trust. The trust funds, unless otherwise restricted or regulated by state or local laws, can be commingled with other funds, but the trust fund nature and purpose as stated in this paragraph shall not be modified nor waived by this commingling provision.

## FUNDS CONTROL

**SEVENTH:** Upon demand by SURETY, PRINCIPAL(s) shall implement the trust or trusts provided for in the SIXTH paragraph of this AGREEMENT by the creation of an account or accounts with a bank or similar depository designated by SURETY, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received for or on account of any CONTRACT(s). Withdrawals from such accounts shall be by check or similar instrument signed by a representative of SURETY. Said trust shall terminate on the payment of all the obligations under the CONTRACT(s) for which the account was created.

## ASSIGNMENT

**EIGHTH:** With respect to each BOND(s) executed by SURETY, PRINCIPAL(s) (with INDEMNITOR(s) hereby consenting), assigns, transfers and conveys to SURETY but subject to the trust created herein:

    A.   All monies due or to become due to PRINCIPAL(s) arising out of or in any way related to CONTRACT(s) covered by BOND(s), including but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work, undisbursed loan funds, deposit or reserve accounts, and all collateral pledged by PRINCIPAL(s) and INDEMNITOR(s) to third parties in connection with the CONTRACT(s) or BOND(s);

    B.   All of the rights of PRINCIPAL(s) in, or arising in any manner out of, all CONTRACT(s) or BOND(s);

    C.   All of the rights, title and interest of the PRINCIPAL(s) in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the work under CONTRACT(s) or BOND(s) or elsewhere, including materials purchased for or chargeable to any and all such CONTRACT(s) or BOND(s), which may be in the process of manufacture or construction, in storage elsewhere, or in transportation to any and all of said sites;

    D.   All of the rights, title and interest of the PRINCIPAL(s) in and to all subcontracts let or to be let in connection with CONTRACT(s) or BOND(s), and in and to all SURETY bonds in favor of PRINCIPAL(s) as obligee relating to such CONTRACT(s) or BOND(s);

    E.   All of the rights, title and interest of PRINCIPAL(s) in and to any actions, causes of action, claims, demands or proceeds of such actions, causes of action, claims or demands whatsoever which PRINCIPAL(s) may have or acquire against any party in connection with the CONTRACT(s) including but not limited to those against obligees on BOND(s) design professionals, subcontractors, laborers or materialmen or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, inventory or other equipment in connection with or on account of any CONTRACT(s) and against any SURETY or sureties of any obligee, subcontractor, laborer, or materialmen;

    F.   All monies due or to become due to PRINCIPAL(s) or INDEMNITOR(s) on any policy of insurance relating to any claims or suits arising out of CONTRACT(s) or BOND(s) including, but not limited to, claims or suits under builders risk, fire or employee dishonesty policies, including premium refunds;

    G.   Any and all rights, title and interest in or use of any patent, copyright or trade secret which is or may be necessary for completion of CONTRACT(s); and

    H.   The above assignment rights are in addition to and not in substitution of any other rights of SURETY arising by operation of law or otherwise.

The above assignments shall become effective as of the date of this AGREEMENT or the date of the BOND(s) whichever occurs first. SURETY agrees to forbear exercising the rights granted to it under this Eighth paragraph until the occurrence of an EVENT OF DEFAULT. Upon the occurrence of an EVENT OF DEFAULT, PRINCIPAL(s) authorizes and empowers SURETY, or any person or persons designated by SURETY, to execute in the name of PRINCIPAL(s) any instruments deemed necessary or desirable by SURETY to provide absolute title to SURETY of any funds, property and rights as are hereby assigned, transferred or conveyed, and PRINCIPAL(s) hereby authorize SURETY or any person or persons designated by SURETY to take immediate possession of such funds, property and rights, to collect such sums as may be due and to endorse, in the name of the PRINCIPAL(s) and to collect any checks, drafts, warrants and or other instruments made and issued in payment of such sums.

SURETY is authorized to assert and prosecute any right or claim assigned in this AGREEMENT in the name of PRINCIPAL(s) and to compromise and settle such right or claim on such terms as it considers reasonable.

SURETY may sell any property assigned to it pursuant to this AGREEMENT at public or private sale, with or without notice, at any time or place, without incurring liability of any kind to PRINCIPAL(s) or INDEMNITOR(s).

## SETTLEMENTS

**NINTH:** SURETY shall have the exclusive right in its name or in the name of PRINCIPAL(s) or INDEMNITOR(s) to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any BOND(s) or to take whatever action it may deem necessary, expedient or appropriate. SURETY's determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled shall be binding and conclusive upon PRINCIPAL(s) and INDEMNITOR(s). The vouchers or other evidence of any such payments made by SURETY shall constitute prima facie evidence of the fact and amount of liability of PRINCIPAL(s) and INDEMNITOR(s) to SURETY.

## PERFECTION OF SECURITY INTEREST

**TENTH:** This AGREEMENT shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this AGREEMENT describing specific items of collateral covered hereunder as shall be necessary. For the purpose of recording this AGREEMENT, a photocopy of this AGREEMENT acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original.

Contract Indemnity Form (Ed: 05/01/06)

## ATTORNEY-IN-FACT

**ELEVENTH:** PRINCIPAL(s) and INDEMNITOR(s) hereby irrevocably nominate, constitute designate and appoint SURETY or any person or persons designated by SURETY as attorney in fact with the right to exercise all of the rights assigned, transferred and set over to SURETY by this AGREEMENT including but not limited to Financing Statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPAL(s) and/or INDEMNITOR(s) under CONTRACT(s) and to execute and deliver any and all additional instruments or documents deemed necessary or desirable by SURETY:

    A.   To vest in SURETY absolute title to any and all monies, property and rights hereby assigned, and
    B.   To provide the protection and rights to SURETY contemplated by all of the provisions of this AGREEMENT.

PRINCIPAL(s) and INDEMNITOR(s) hereby ratify and confirm all acts and actions taken and done by SURETY as such Attorney-in-Fact.

## TAKEOVER

**TWELFTH:** Upon occurrence of any EVENT OF DEFAULT, SURETY, at its discretion, shall have the right, but not the obligation conferred upon it by law or by the terms of this AGREEMENT, to take possession of any part or all of the work under CONTRACT(s), at the expense of PRINCIPAL(s) and INDEMNITOR(s), to complete or arrange for completion of the work, and to take such steps which, at its discretion, SURETY may deem advisable or necessary to obtain SURETY's release or to avoid or mitigate loss.

In the event that the CONTRACT(s) and/or BOND(s) relate to the performance of a subdivision agreement between PRINCIPAL(s) and a public entity, and an EVENT OF DEFAULT occurs, SURETY shall have the right, but not the obligation, to revert to acreage the real property which is the subject of the subdivision improvement agreement.

## DECLINATION OF SURETYSHIP

**THIRTEENTH:** SURETY may decline to execute any BOND(s) applied for and the PRINCIPAL(s) and INDEMNITOR(s) shall have no cause of action against SURETY in consequence of its failure to execute any BOND(s). If SURETY executes or provides a bid bond or proposal bond, SURETY retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid or proposal. Evidence of custom and usage will have no bearing on SURETY's right to decline suretyship under this paragraph.

## NOTICE OF EXECUTION

**FOURTEENTH:** INDEMNITOR(s) hereby waive notice of the execution of any BOND(s) and of the acceptance of this AGREEMENT by SURETY. PRINCIPAL(s) and INDEMNITOR(s) hereby waive all notice of any default, or any other act or acts giving rise to any claim under said BOND(s), as well as notice of any and all liability of SURETY under said BOND(s). PRINCIPAL(s) and INDEMNITOR(s) shall continue to be bound under this AGREEMENT, notwithstanding lack of notice to which they may have been otherwise entitled and notwithstanding any defenses that they would have been entitled to raise.

## RIGHT TO INFORMATION

**FIFTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will furnish SURETY such information as it may request from time to time concerning the financial condition of PRINCIPAL(s) and INDEMNITOR(s), the status of work under any CONTRACT(s), and/or the payment of obligations in connection therewith.

## BOOKS AND RECORDS

**SIXTEENTH:** At any time during this AGREEMENT and until such time as the liability of SURETY under all BOND(s) is terminated and SURETY is fully reimbursed all amounts due under this AGREEMENT, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPAL(s) and INDEMNITOR(s), wherever located, for the purpose of inspection, copying or reproduction. Any financial institution, depository, warehouse, supply house, or other person, firm or corporation, when requested by SURETY, is hereby authorized and required to furnish SURETY any and all information requested including, but not limited to: (i) the status of the work under any CONTRACT(s) being performed by PRINCIPAL(s); (ii) the condition of performance of any CONTRACT(s); (iii) payments or pending payments of accounts including undisbursed loan proceeds; and (iv) full information about all bank accounts and loans and any collateral deposited in connection therewith. Upon SURETY's request, PRINCIPAL(S) and INDEMNITOR(s) shall immediately deliver to SURETY, or its designee, at a time and place and in a manner determined by SURETY, such books, records, accounts, documents, computer software and other computer stored information, and contracts in whatever form, as and when requested by SURETY.

## PREMIUMS

**SEVENTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) shall pay all premiums and charges of SURETY for the BOND(s) and for all policies of insurance whether procured from SURETY or from other insurance companies until PRINCIPAL(s) and INDEMNITOR(s) shall serve evidence satisfactory to SURETY of its discharge or release from all BOND(s) and all liability by reason thereof. The failure of PRINCIPAL(s) or INDEMNITOR(s) to pay premiums shall not constitute a defense to an action under this AGREEMENT.

## DISCHARGE FROM SURETYSHIP

**EIGHTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will, upon request of SURETY, take action to procure the discharge of SURETY from any BOND(s) and from any liability thereof. SURETY may, at any time take such action as it deems necessary or proper to obtain its release from any and all liability under any BOND(s). Upon discharge or release, SURETY shall return to PRINCIPAL(s) any portion of premium paid which is unearned as a result of such discharge provided that PRINCIPAL(s) is not indebted to SURETY for any other reason.

## SURETYSHIP COVERED

**NINETEENTH:** This AGREEMENT applies to all BOND(s) executed or procured by SURETY for the PRINCIPAL(s) in his own name or as co-venturer with others, whether prior to or subsequent to the execution and delivery of this AGREEMENT and from time to time until this AGREEMENT is terminated in accordance with its terms.

Contract Indemnity Form (Ed: 05/01/06)

**PROTECTION OF OTHER SURETIES**

**TWENTIETH:** If SURETY procures the execution of any BOND(s) by other sureties or executes the BOND(s) with co-sureties, or reinsures any portion of said BOND(s) with reinsuring sureties, then all the terms and conditions of this AGREEMENT shall inure to the benefit, as their interests may appear, of such other sureties, co-sureties and reinsurers who shall have the right to maintain an action or actions on this AGREEMENT to enforce their rights hereunder.

**WAIVER OF HOMESTEAD RIGHT**

**TWENTY FIRST:** PRINCIPAL(s) and/or INDEMNITOR(s) waive, so far as their respective obligations under this AGREEMENT are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution or sale or other legal process under the laws of any state, territory or possession of the United States.

**NOTICE TO SURETY**

**TWENTY SECOND:** PRINCIPAL(s) and INDEMNITOR(s) shall promptly provide all written notices to SURETY required in this AGREEMENT at 436 Walnut Street, WA10F, Philadelphia PA 19106, Attention: Surety Department, including but not limited to the following events:

   A.   Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) is in default on any BOND(s) and/or CONTRACT(s) or has failed or refused to perform any CONTRACT(s);
   B.   Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) cure its performance or show cause as to the reason(s) PRINCIPAL(s) should not be terminated or defaulted on any BOND(s) or CONTRACT(s); and
   C.   Notice by obligee that there has been a material change in the CONTRACT(s) in connection with the scope of work, the contract amount, the time or method for completion of such CONTRACT(s).

**CONSENT TO CHANGES**

**TWENTY THIRD:** SURETY is authorized, without notice to or knowledge of PRINCIPAL(s) or INDEMNITOR(s), to assent to any change whatsoever in any BOND(s) and any CONTRACT(s) including, but not limited to, any change in the time for completion of CONTRACT(s) and for payments or advances thereunder, to assent to or to take any assignment or assignments, to execute or consent to execution of any continuations, extensions, renewals, enlargements, modifications, changes or alterations of any BOND(s) and to execute any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger penalties, and PRINCIPAL(s) and INDEMNITOR(s) shall remain bound under the terms of this AGREEMENT even though any such assent by SURETY does or may substantially increase the liability of PRINCIPAL(s) and INDEMNITOR(s).

**SUBORDINATION OF INDEMNITORS**

**TWENTY FOURTH:** PRINCIPAL(s) and INDEMNITOR(s) waive and subordinate all rights of indemnity, subrogation and contribution of each against the other until all obligations to SURETY under this AGREEMENT, at law or in equity, have been fully satisfied.

**ELECTION OF REMEDIES**

**TWENTY FIFTH:** All rights and remedies of SURETY under this AGREEMENT shall be cumulative, and the exercise of or failure to exercise, any right or remedy at anytime shall not be an election of remedy or a waiver of any other right or remedy. Failure of SURETY to pursue any remedy against any one or more of PRINCIPAL(s) and INDEMNITOR(s) shall not release or waive any right against any other of the PRINCIPAL(s) and/or INDEMNITOR(s).

**OTHER INDEMNITY**

**TWENTY SIXTH:** The rights, powers and remedies given to SURETY by this AGREEMENT shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which SURETY may have or acquire against PRINCIPAL(s) and INDEMNITOR(s) or others whether by the terms of any other agreement, by operation of law or otherwise.

PRINCIPAL(s) and INDEMNITOR(s) shall continue to remain bound under this AGREEMENT even though SURETY may have, at any time either prior to or after the execution of this AGREEMENT, with or without knowledge of PRINCIPAL(s) and INDEMNITOR(s), accepted or released other agreements of indemnity from PRINCIAPL(s), INDEMNITOR(s) or others or released collateral held in connection with the execution of BOND(s) or other policies of insurance.

**PARTIAL INVALIDITY OR EXECUTION**

**TWENTY SEVENTH:** If any of the persons named herein as PRINCIPAL(s) and INDEMNITOR(s) fails to execute this AGREEMENT or if the execution hereof by any of the PRINCIPAL(s) and INDEMNITOR(s) shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other PRINCIPAL(s) and INDEMNITOR(s).

Failure of the PRINCIPAL(s) to sign any BOND(s) shall not relieve the PRINCIPAL(s) and INDEMNITOR(s) of liability under this AGREEMENT.

If any provision or provisions of this AGREEMENT are held to be void or unenforceable under the laws of the place governing its construction or enforcement, this AGREEMENT shall not be void or unenforceable thereby but shall continue in effect and be enforceable as though such provision or provisions were omitted.

**SEPARATE ACTION SETTLEMENT**

**TWENTY EIGHTH:** Separate suits may be brought on this AGREEMENT against any and all of the PRINCIPAL(s) and INDEMNITOR(s) and the bringing of the suit or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of another suit or suits at any time.

SURETY is hereby expressly authorized to settle any claim based upon this AGREEMENT with any one or more of PRINCIPAL(s) and/or INDEMNITOR(s) individually, and such settlement or compromise shall not affect the liability of any of the rest of the PRINCIPAL(s) and INDEMNITOR(s).

Contract Indemnity Form (Ed: 05/01/06)

## SET OFF

**TWENTY NINTH:** SURETY may reduce the amount of PRINCIPAL's and INDEMNITOR's liability to SURETY hereunder by applying to such liability any money payable to PRINCIPAL(s) and/or INDEMNITOR(s) by SURETY. The money payable to PRINCIPAL(s) or INDEMNITOR(s) may be, but is not limited to, any money payable by SURETY as an insurer of PRINCIPAL(s) or INDEMNITOR(s) or as an insurer of any other individual or legal entity, or any money payable to PRINCIPAL(s) or INDEMNITOR(s) as a return of unearned or other premium, or money payable to settle a claim of PRINCIPAL(s) or INDEMNITOR(s) against SURETY or any individual or legal entity insured or bonded by SURETY.

## WAIVER AND MODIFICATION

**THIRTIETH:** The rights and remedies afforded to SURETY by the terms of this AGREEMENT may not be waived or modified orally and no written change or modification shall be effective until signed by an officer of SURETY.

## TERMINATION

**THIRTY FIRST:** This is a continuing AGREEMENT which remains in full force and effect until terminated. If PRINCIPAL(s) or INDEMNITOR(s) previously executed a similar agreement of indemnity in favor of SURETY, SURETY's accepting this AGREEMENT neither terminates nor relieves PRINCIPAL(s) or INDEMNITOR(s) from such similar agreements unless terminated in accordance with the terms and conditions of such similar agreements.

This AGREEMENT may be terminated as to PRINCIPAL(s) or any INDEMNITOR(s) upon written notice sent by registered or certified mail to SURETY at its offices at 436 Walnut Street, WA10F, Philadelphia, PA 19106.

Termination of this AGREEMENT shall not be effective until thirty (30) days after receipt of said written notice by SURETY.

Termination of this AGREEMENT shall not relieve PRINCIPAL(s) or INDEMNITOR(s) from liability to SURETY arising out of BOND(s) executed, provided or procured by SURETY on behalf of PRINCIPAL(s) prior to the effective date of such termination.

IN WITNESS WHEREOF, THE UNDERSIGNED has/have executed this AGREEMENT this _24_ day of _Sept_ , 20_10_.

PRINCIPAL(s): INTERIOR PARTITIONS, INC.

By _____    Address 7362 6WN ROAD
Name and Title TODD R. MADSEN, PRESIDENT            CASPER, WY 82604

By _____    Address _____
Name and Title

By _____    Address _____
Name and Title

By _____    Address _____
Name and Title

INDEMNITOR(s): TODD R. MADSEN, MARY K. MADSEN, STEVEN C. MADSEN, NANCI K. MADSEN

By _____    Address 1440 N GRASS CREEK ROAD
TODD R. MADSEN, AN INDIVIDUAL            CASPER, WY 82604

By _____    Address 1440 N GRASS CREEK ROAD
MARY K. MADSEN, AN INDIVIDUAL            CASPER, WY 82604

By _____    Address 3966 W 38TH
STEVEN C. MADSEN, AN INDIVIDUAL            CASPER, WY 82604

By _____    Address 3966 W 38TH
NANCI K. MADSEN, AN INDIVIDUAL            CASPER, WY 82604

By _____    Address _____

By _____    Address _____

By _____    Address _____

By _____    Address _____

Page 6 of 8

Contract Indemnity Form (Ed: 05/01/86)

**FOR NOTARIAL ACKNOWLEDGMENT OF PRINCIPAL(s)/INDEMNITOR(s)**

### CORPORATE/LLC ACKNOWLEDGMENT

State of ___WYOMING___ )
County of ___NATRONA___ ) ss:
On this __21ST__ day of __September__, 20_10_, before me personally came ___TODD R. MADSEN___ to me known, who
being by me duly sworn, deposed and says that (he)(she) is the __PRESIDENT__ of __INTERIOR PARTITIONS, INC.__, the
corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such
corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_____
(Signature of Notary Public)
My commission expires ___6 7.011___

[Notary Seal: NOTARY PUBLIC
SHARON J. ZABRISKIE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires Jan 69, 2011]

### CORPORATE/LLC ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20___, before me personally came _____ to me known, who
being by me duly sworn, deposed and says that (he)(she) is the _____ of _____, the
corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such
corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_____
(Signature of Notary Public)
My commission expires _____

### CORPORATE/LLC ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20___, before me personally came _____ to me known, who
being by me duly sworn, deposed and says that (he)(she) is the _____ of _____, the
corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such
corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_____
(Signature of Notary Public)
My commission expires _____

### CORPORATE/LLC ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20___, before me personally came _____ to me known, who
being by me duly sworn, deposed and says that (he)(she) is the _____ of _____, the
corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such
corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_____
(Signature of Notary Public)
My commission expires _____

### PARTNERSHIP ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20___, before me personally comes _____ a
member of the co-partnership of _____ to me known and known to me to be the person(s)
who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same as and for the act and deed of the said co-
partnership.

_____
(Signature of Notary Public)
My commission expires _____

### PARTNERSHIP ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20___, before me personally comes _____ a
member of the co-partnership of _____ to me known and known to me to be the person(s)
who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same as and for the act and deed of the said co-
partnership.

_____
(Signature of Notary Public)
My commission expires _____

Contract Indemnity Form (Ed: 05/01/06)

## INDIVIDUAL ACKNOWLEDGMENT

State of __WYOMING__

County of __NATRONA__ ) ss:

On this __24th__ day of __September__, 20 __10__, before me personally came __TODD R. MADSEN__ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

(Signature of Notary Public)
My commission expires __January 9, 2011__

NOTARY PUBLIC
SHARON J. ZABRISKIE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires Jan 09, 2011

## INDIVIDUAL ACKNOWLEDGMENT

State of __WYOMING__

County of __NATRONA__ ) ss:

On this __24th__ day of __September__, 20 __10__, before me personally came __MARY K. MADSEN__ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

(Signature of Notary Public)
My commission expires __January 9, 2011__

NOTARY PUBLIC
SHARON J. ZABRISKIE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires Jan 09, 2011

## INDIVIDUAL ACKNOWLEDGMENT

State of __WYOMING__

County of __NATRONA__ ) ss:

On this __24th__ day of __September__, 20 __10__, before me personally came __STEVEN C. MADSEN__ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

(Signature of Notary Public)
My commission expires __January 9, 2011__

NOTARY PUBLIC
SHARON J. ZABRISKIE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires Jan 09, 2011

## INDIVIDUAL ACKNOWLEDGMENT

State of __WYOMING__

County of __NATRONA__ ) ss:

On this __24th__ day of __September__, 20 __10__, before me personally came __NANCI K. MADSEN__ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

(Signature of Notary Public)
My commission expires __January 9, 2011__

NOTARY PUBLIC
SHARON J. ZABRISKIE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires Jan 09, 2011

## INDIVIDUAL ACKNOWLEDGMENT

State of _____

County of _____ ) ss:

On this _____ day of _____, 20 ____, before me personally came _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

(Signature of Notary Public)
My commission expires _____

## INDIVIDUAL ACKNOWLEDGMENT

State of _____

County of _____ ) ss:

On this _____ day of _____, 20 ____, before me personally came _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

(Signature of Notary Public)
My commission expires _____

Contract Indemnity Form (Ed: 05/01/06)



## AGREEMENT OF INDEMNITY

This Agreement of Indemnity ("AGREEMENT"), is made and entered into by the following individuals, partnerships and/or corporations
Interior Partitions, Inc.
Ranabern Property Management, LLC

**as PRINCIPAL(s) and**

| INDEMNITOR(s) | Social Security or EIN Number | Mailing Address |
|---|---|---|
| Todd R. Madson | ████████████ | 1440 N Grass Creek, Casper, WY 82604 |
| Mary K. Madson | ████████████ | 1440 N Grass Creek, Casper, WY 82604 |

**as INDEMNITOR(s) and Westchester Fire Insurance Company, as SURETY.**

### WITNESSETH

WHEREAS, PRINCIPAL(s), in the performance of contracts and the fulfillment of obligations generally, whether solely in its own name or as co-venturer with others, may desire, or be required to give or procure certain BOND(s), and to renew, or continue or substitute the same from time to time with the same or different BOND amounts, and/or conditions or to refrain from canceling said BOND(s);

WHEREAS, at the request of PRINCIPAL(s) and/or INDEMNITOR(s) or both and upon the express understanding that this AGREEMENT should be given, SURETY has executed or caused to be executed, and may from time to time hereafter execute or cause to be executed, said BOND(s) on behalf of the PRINCIPAL(s);

WHEREAS, PRINCIPAL(s) and INDEMNITOR(s) have a substantial, material and beneficial interest in the obtaining, renewing, continuing or substituting of BOND(s); and

WHEREAS, SURETY has relied upon and will continue to rely upon the representations of PRINCIPAL(s) and INDEMNITOR(s) as to their character, identity, control, beneficial and legal ownership, financial condition and existence in procuring or executing BOND(s).

NOW THEREFORE, in consideration of the above stated premises, and of other good and valuable consideration, the receipt of which is hereby acknowledged, PRINCIPAL(s) and INDEMNITOR(s) for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with SURETY, its successors and assigns, as follows:

### DEFINITIONS

**FIRST:** Where they appear in this AGREEMENT and any addenda hereto, the following terms are defined as set forth in this paragraph:

"BOND(s)" means an undertaking or a contract of suretyship, guaranty or indemnity, or an agreement, consent or letter to provide such an undertaking or contract, and the continuation, extension, alteration, renewal or substitution of such an undertaking, contract, agreement, consent or letter, whether with the same or different amounts or conditions, executed or procured by SURETY before or after the date of this AGREEMENT (excluding at the option of SURETY any BOND(s) which are written by SURETY in reliance upon another valid and enforceable agreement of indemnity in favor of SURETY).

"CONTRACT(s)" means an agreement executed between PRINCIPAL(s) and a third party, together with all associated documents (including, but not limited to, general and special conditions, specifications and drawings) or an undertaking made, obligation or duty assumed, either statutory or otherwise, for which SURETY executes or procures the execution of a BOND(s).

"EVENT OF DEFAULT" means any one or more of the following:

- A. Any notice of default by an obligee on any BOND(s) due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any CONTRACT or obligation contained therein or in the BOND(s) itself, whether actual or alleged;
- B. Any failure, delay, refusal or inability of PRINCIPAL(s) to pay claims, bills or other indebtedness incurred in, or in connection with the performance of any CONTRACT;
- C. The failure to perform, or comply with the terms, covenants or obligations in this AGREEMENT;
- D. The failure to pay or discharge, when due, all indebtedness of PRINCIPAL(s) and/or INDEMNITOR(s) to SURETY;
- E. An assignment by PRINCIPAL(s) for the benefit of creditors, or the appointment or an application by PRINCIPAL(s) for the appointment of a receiver or trustee for PRINCIPAL(s) or its property, solvent or not, or if proceedings for the appointment of a receiver or trustee for liquidation, reorganization or arrangement of PRINCIPAL(s) shall be initiated by others;
- F. If PRINCIPAL or INDEMNITOR is an individual, the death, disappearance, declaration of incompetence, conviction of a felony, imprisonment or, if PRINCIPAL(s) and/or INDEMNITOR(s) is not an individual, any change in character, identity, control, arrangement, legal or beneficial ownership or existence of such PRINCIPAL(s) and/or INDEMNITOR(s);
- G. Any proceeding or the exercise of any rights by any individual or entity which deprives or impairs the PRINCIPAL's use of its plant, machinery, equipment, plan, drawings, tools, supplies or materials;

Contract Indemnity Form (Ed: 05/01/06)

H.  In the event that CONTRACT(s), or any portion thereof, relates to the development of real property or construction of improvements upon real property: (i) the failure of PRINCIPAL(s) to pay for labor and materials ordered or used in connection with such development or construction of improvements; (ii) the diversion or non-use by PRINCIPAL(s) of loan funds, equity funds or materials intended by any lender, equity contributor or supplier of such funds or materials to be used and which are needed to perform the CONTRACT(s); or (iii) the voluntary or involuntary cessation or suspension of work required to be performed by PRINCIPAL(s) in connection with the CONTRACT(s);

I.  The failure of PRINCIPAL(s), INDEMNITOR(s) to promptly furnish accurate, complete and current financial statements upon request of SURETY or the furnishing of a financial statement which contains any material misstatement or misrepresentation whether intentional or unintentional;

J.  Any suspension, revocation or other material adverse change in the status of any license of PRINCIPAL(s) with any applicable licensing board or agency that is required to perform the CONTRACT(s) or discharge any obligation under any BOND(s); and

K.  The occurrence of any event other than specified in A. through J. herein which, in the SURETY's sole opinion, may expose SURETY to loss, cost or expense including, but not limited to, a material adverse change in the financial condition of the PRINCIPAL(s) and/or INDEMNITOR(s).

"PRINCIPAL(s)" means any individual or entity for which SURETY executes BOND(s) including any one, combination of, or all of the named individuals, partnerships, or firms or corporation set forth above, any of their present or future subsidiaries, affiliates, whether a corporation, partnership or other entity, their successors in interest, whether acting alone or in joint venture with others not named herein, including any such individual or entity for which SURETY executes BOND(s) or any unrelated individual or entity for which SURETY executes BOND(s) at the request of any INDEMNITOR(s).

"SURETY" means Westchester Fire Insurance Company and its successors, assigns, affiliates, associates and subsidiary companies.

## NOTICE TO SURETY OF ANTICIPATED CHANGE IN NATURE OF PRINCIPAL(s)/INDEMNITOR(s)

SECOND:  Written notice must be given by PRINCIPAL(s) and/or INDEMNITOR(s) at the earliest practical time of any anticipated change or negotiations entered into by PRINCIPAL(s) or INDEMNITOR(s) for any anticipated change in the character or identity of PRINCIPAL(s) or INDEMNITOR(s), or of a change of 5% or more in the beneficial or legal ownership of the stock of PRINCIPAL(s) and/or INDEMNITOR(s). Upon receipt of said notice, SURETY shall have the right to examine the books and records and other documents and information pursuant to the Sixteenth paragraph hereof.

## INDEMNITY AND HOLD HARMLESS

THIRD:  PRINCIPAL(s) and INDEMNITOR(s) shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which SURETY may sustain or incur by reason of or in consequence of that:

A.  Execution or procurement of the execution of BOND(s);
B.  Failure by PRINCIPAL(s) or INDEMNITOR(s) to perform or comply with any of the covenants or conditions of this AGREEMENT;
C.  Any Event of Default herein;
D.  Enforcement of any covenant of this AGREEMENT;
E.  Performance of any investigation, attempt or attainment of any release in connection with any BOND(s) or any loss or unpaid premium in connection with any BOND(s);
F.  Prosecution or defense of any action or claim in connection with any BOND(s), whether SURETY, at its own discretion, elects to employ counsel of its own selection or permits or requires PRINCIPAL(s) or INDEMNITOR(s) to make arrangements for SURETY's legal representation; and
G.  Attempt to recover losses or expenses paid or incurred in connection with this AGREEMENT, CONTRACT(s) and/or BOND(s).

Payment shall be made to SURETY by the PRINCIPAL(s) and/or INDEMNITOR(s) as soon as liability exists or is asserted against SURETY, whether or not SURETY shall have made any payment therefore. Such payment shall be equal to whatever amount SURETY, in its judgment, shall deem sufficient to protect it from loss. SURETY shall have the right to use the payment or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT.

In the event of payment by SURETY, SURETY shall be entitled to any accounting with PRINCIPAL(s) or INDEMNITOR(s) to reimbursement for any and all disbursements made by it in good faith in and about the matters contemplated by this AGREEMENT under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of any such payments made by SURETY shall be prima facie evidence of the fact and amount of liability to SURETY. PRINCIPAL(s) and INDEMNITOR(s) shall pay to SURETY interest on all disbursements made by SURETY at the maximum rate permitted by law calculated from the date of each disbursement.

## RESERVE-DEPOSIT

FOURTH:  If for any reason the SURETY shall deem it necessary to establish or to increase a reserve to cover any possible liability or loss for which the PRINCIPAL(s) and INDEMNITOR(s) will be obligated to indemnify SURETY under the terms of this AGREEMENT, PRINCIPAL(s) and INDEMNITOR(s) will deposit with SURETY, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to SURETY for such liability or loss.

SURETY shall have the right to use such deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT. SURETY shall have no obligation to invest, or to provide a return on the deposit. PRINCIPAL(s) and INDEMNITOR(s) shall be entitled to the return of any unused portion of the deposit upon termination of the liability of SURETY on the BOND(s) and the performance by PRINCIPAL(s) and INDEMNITOR(s) under the terms of this AGREEMENT.

SURETY's demand shall be sufficient if sent by REGISTERED or CERTIFIED MAIL to the PRINCIPAL(s) and INDEMNITOR(s) at the addresses stated herein, or at the addresses last known to SURETY, whether or not such demand is actually received.

## ADVANCES

FIFTH:  INDEMNITOR(s) hereby authorize and empower SURETY, within SURETY's sole discretion, to guarantee loans, extend SURETY credit, advance, or to lend PRINCIPAL(s) any money, which SURETY may see fit for the purpose of completing CONTRACT(s) or discharging obligations under BOND(s) including such overhead as might be necessary and all such guarantees, credit, advances or loans as well as all costs and expenses incurred by SURETY in relation thereto shall be presumed to be a loss for which PRINCIPAL(s) and INDEMNITOR(s) shall be responsible under this AGREEMENT, notwithstanding that said money or any part thereof should not be used by PRINCIPAL(s).

Contract Indemnity Form (Ed: 05/01/06)

## TRUST FUND

**SIXTH:** All payments received for or on account of any CONTRACT(s) shall be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any CONTRACT(s) and for labor, materials, and services furnished in the prosecution of the work under any CONTRACT(s) or any extensions or modifications thereto. All monies due and to become due under any CONTRACT(s) are also trust funds, whether in the possession of PRINCIPAL(s), INDEMNITOR(s) or otherwise. The trust funds shall be for the benefit and payment of all obligations for which SURETY may be liable under any BOND(s). The trust funds shall inure to the benefit of SURETY for any liability or loss it may have or sustain under any BOND(s), and this AGREEMENT and declaration constitute notice of such trust. The trust funds, unless otherwise restricted or regulated by state or local laws, can be commingled with other funds, but the trust fund nature and purpose as stated in this paragraph shall not be modified nor waived by this commingling provision.

## FUNDS CONTROL

**SEVENTH:** Upon demand by SURETY, PRINCIPAL(s) shall implement the trust or trusts provided for in the SIXTH paragraph of this AGREEMENT by the creation of an account or accounts with a bank or similar depository designated by SURETY, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received for or on account of any CONTRACT(s). Withdrawals from such accounts shall be by check or similar instrument signed by a representative of SURETY. Said trust shall terminate on the payment of all the obligations under the CONTRACT(s) for which the account was created.

## ASSIGNMENT

**EIGHTH:** With respect to each BOND(s) executed by SURETY, PRINCIPAL(s) (with INDEMNITOR(s) hereby consenting), assigns, transfers and conveys to SURETY but subject to the trust created herein:

A.  All monies due or to become due to PRINCIPAL(s) arising out of or in any way related to CONTRACT(s) covered by BOND(s), including but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work, undisbursed loan funds, deposit or reserve accounts, and all collateral pledged by PRINCIPAL(s) and INDEMNITOR(s) to third parties in connection with the CONTRACT(s) or BOND(s);

B.  All of the rights of PRINCIPAL(s) in, or arising in any manner out of, all CONTRACT(s) or BOND(s);

C.  All of the rights, title and interest of the PRINCIPAL(s) in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the work under CONTRACT(s) or BOND(s) or elsewhere, including materials purchased for or chargeable to any and all such CONTRACT(s) or BOND(s), which may be in the process of manufacture or construction, in storage elsewhere, or in transportation to any and all of said sites;

D.  All of the rights, title and interest of the PRINCIPAL(s) in and to all subcontracts let or to be let in connection with CONTRACT(s) or BOND(s), and in and to all SURETY bonds in favor of PRINCIPAL(s) as obligee relating to such CONTRACT(s) or BOND(s);

E.  All of the rights, title and interest of PRINCIPAL(s) in and to any actions, causes of action, claims, demands or proceeds of such actions, causes of action, claims or demands whatsoever which PRINCIPAL(s) may have or acquire against any party in connection with the CONTRACT(s) including but not limited to those against obligees on BOND(s) design professionals, subcontractors, laborers or materialmen or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, inventory or other equipment in connection with or on account of any CONTRACT(s) and against any SURETY or sureties of any obligee, subcontractor, laborer, or materialmen;

F.  All monies due or to become due to PRINCIPAL(s) or INDEMNITOR(s) on any policy of insurance relating to any claims or suits arising out of CONTRACT(s) or BOND(s) including, but not limited to, claims or suits under builders risk, fire or employee dishonesty policies, including premium refunds;

G.  Any and all rights, title and interest in or use of any patent, copyright or trade secret which is or may be necessary for completion of CONTRACT(s); and

H.  The above assignment rights are in addition to and not in substitution of any other rights of SURETY arising by operation of law or otherwise.

The above assignments shall become effective as of the date of this AGREEMENT or the date of the BOND(s) whichever occurs first. SURETY agrees to forbear exercising the rights granted to it under this Eighth paragraph until the occurrence of an EVENT OF DEFAULT. Upon the occurrence of an EVENT OF DEFAULT, PRINCIPAL(s) authorizes and empowers SURETY, or any person or persons designated by SURETY, to execute in the name of PRINCIPAL(s) any instruments deemed necessary or desirable by SURETY to provide absolute title to SURETY of any funds, property and rights as are hereby assigned, transferred or conveyed, and PRINCIPAL(s) hereby authorizes SURETY or any person or persons designated by SURETY to take immediate possession of such funds, property and rights, to collect such sums as may be due and to endorse, in the name of the PRINCIPAL(s) and to collect any checks, drafts, warrants and or other instruments made and issued in payment of such sums.

SURETY is authorized to assert and prosecute any right or claim assigned in this AGREEMENT in the name of PRINCIPAL(s) and to compromise and settle such right or claim on such terms as it considers reasonable.

SURETY may sell any property assigned to it pursuant to this AGREEMENT at public or private sale, with or without notice, at any time or place, without incurring liability of any kind to PRINCIPAL(s) or INDEMNITOR(s).

## SETTLEMENTS

**NINTH:** SURETY shall have the exclusive right in its name or in the name of PRINCIPAL(s) or INDEMNITOR(s) to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any BOND(s) or to take whatever action it may deem necessary, expedient or appropriate. SURETY's determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled shall be binding and conclusive upon PRINCIPAL(s) and INDEMNITOR(s). The vouchers or other evidence of any such payments made by SURETY shall constitute prima facie evidence of the fact and amount of liability of PRINCIPAL(s) and INDEMNITOR(s) to SURETY.

## PERFECTION OF SECURITY INTEREST

**TENTH:** This AGREEMENT shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this AGREEMENT describing specific items of collateral covered hereunder as shall be necessary. For the purpose of recording this AGREEMENT, a photocopy of this AGREEMENT acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original.

Contract Indemnity Form (Ed: 05/01/06)

## ATTORNEY-IN-FACT

**ELEVENTH:** PRINCIPAL(s) and INDEMNITOR(s) hereby irrevocably nominate, constitute designate and appoint SURETY or any person or persons designated by SURETY as attorney in fact with the right to exercise all of the rights assigned, transferred and set over to SURETY by this AGREEMENT including but not limited to Financing Statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPAL(s) and/or INDEMNITOR(s) under CONTRACT(s) and to execute and deliver any and all additional instruments or documents deemed necessary or desirable by SURETY:

    A.   To vest in SURETY absolute title to any and all monies, property and rights hereby assigned, and

    B.   To provide the protection and rights to SURETY contemplated by all of the provisions of this AGREEMENT.

PRINCIPAL(s) and INDEMNITOR(s) hereby ratify and confirm all acts and actions taken and done by SURETY as such Attorney-In-Fact.

## TAKEOVER

**TWELFTH:** Upon occurrence of any EVENT OF DEFAULT, SURETY, at its discretion, shall have the right, but not the obligation conferred upon it by law or by the terms of this AGREEMENT, to take possession of any part or all of the work under CONTRACT(s), at the expense of PRINCIPAL(s) and INDEMNITOR(s), to complete or arrange for completion of the work, and to take such steps which, at its discretion, SURETY may deem advisable or necessary to obtain SURETY's release or to avoid or mitigate loss.

In the event that the CONTRACT(s) and/or BOND(s) relate to the performance of a subdivision agreement between PRINCIPAL(s) and a public entity, and an EVENT OF DEFAULT occurs, SURETY shall have the right, but not the obligation, to revert to acreage the real property which is the subject of the subdivision improvement agreement.

## DISCLINATION OF SURETYSHIP

**THIRTEENTH:** SURETY may decline to execute any BOND(s) applied for and the PRINCIPAL(s) and INDEMNITOR(s) shall have no cause of action against SURETY in consequence of its failure to execute any BOND(s). If SURETY executes or provides a bid bond or proposal bond, SURETY retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid or proposal. Evidence of custom and usage will have no bearing on SURETY's right to decline suretyship under this paragraph.

## NOTICE OF EXECUTION

**FOURTEENTH:** INDEMNITOR(s) hereby waive notice of the execution of any BOND(s) and of the acceptance of this AGREEMENT by SURETY. PRINCIPAL(s) and INDEMNITOR(s) hereby waive all notice of any default, or any other act or acts giving rise to any claim under said BOND(s), as well as notice of any and all liability of SURETY under said BOND(s). PRINCIPAL(s) and INDEMNITOR(s) shall continue to be bound under this AGREEMENT, notwithstanding lack of notice to which they may have been otherwise entitled and notwithstanding any defenses that they would have been entitled to raise.

## RIGHT TO INFORMATION

**FIFTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will furnish SURETY such information as it may request from time to time concerning the financial condition of PRINCIPAL(s) and INDEMNITOR(s), the status of work under any CONTRACT(s), and/or the payment of obligations in connection therewith.

## BOOKS AND RECORDS

**SIXTEENTH:** At any time during this AGREEMENT and until such time as the liability of SURETY under all BOND(s) is terminated and SURETY is fully reimbursed all amounts due under this AGREEMENT, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPAL(s) and INDEMNITOR(s), wherever located, for the purpose of inspection, copying or reproduction. Any financial institution, depository, warehouse, supply house, or other person, firm or corporation, when requested by SURETY, is hereby authorized and required to furnish SURETY any and all information requested including, but not limited to: (i) the status of the work under any CONTRACT(s) being performed by PRINCIPAL(s), (ii) the condition of performance of any CONTRACT(s), (iii) payments or pending payments of accounts including undisbursed loan proceeds; and (iv) full information about all bank accounts and loans and any collateral deposited in connection therewith. Upon SURETY's request, PRINCIPAL(S) and INDEMNITOR(s) shall immediately deliver to SURETY, or its designee, at a time and place and in a manner determined by SURETY, such books, records, accounts, documents, computer software and other computer stored information, and contracts in whatever form, as and when requested by SURETY.

## PREMIUMS

**SEVENTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) shall pay all premiums and charges of SURETY for the BOND(s) and for all policies of insurance whether procured from SURETY or from other insurance companies until PRINCIPAL(s) and INDEMNITOR(s) shall serve evidence satisfactory to SURETY of its discharge or release from all BOND(s) and all liability by reason thereof. The failure of PRINCIPAL(s) or INDEMNITOR(s) to pay premiums shall not constitute a defense to an action under this AGREEMENT.

## DISCHARGE FROM SURETYSHIP

**EIGHTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will, upon request of SURETY, take action to procure the discharge of SURETY from any BOND(s) and from any liability thereof. SURETY may, at any time take such action as it deems necessary or proper to obtain its release from any and all liability under any BOND(s). Upon discharge or release, SURETY shall return to PRINCIPAL(s) any portion of premium paid which is unearned as a result of such discharge provided that PRINCIPAL(s) is not indebted to SURETY for any other reason.

## SURETYSHIP COVERED

**NINETEENTH:** This AGREEMENT applies to all BOND(s) executed or procured by SURETY for the PRINCIPAL(s) in his own name or as co-venturer with others, whether prior to or subsequent to the execution and delivery of this AGREEMENT and from time to time until this AGREEMENT is terminated in accordance with its terms.

Contract Indemnity Form (Ed: 05/01/06)

## PROTECTION OF OTHER SURETIES

**TWENTIETH:** If SURETY procures the execution of any BOND(s) by other sureties or executes the BOND(s) with co-sureties, or reinsures any portion of said BOND(s) with reinsuring sureties, then all the terms and conditions of this AGREEMENT shall inure to the benefit, as their interests may appear, of such other sureties, co-sureties and reinsurers who shall have the right to maintain an action or actions on this AGREEMENT to enforce their rights hereunder.

## WAIVER OF HOMESTEAD RIGHT

**TWENTY FIRST:** PRINCIPAL(s) and/or INDEMNITOR(s) waive, so far as their respective obligations under this AGREEMENT are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution or sale or other legal process under the laws of any state, territory or possession of the United States.

## NOTICE TO SURETY

**TWENTY SECOND:** PRINCIPAL(s) and INDEMNITOR(s) shall promptly provide all written notices to SURETY required in this AGREEMENT at 436 Walnut Street, WA10F, Philadelphia PA 19106, Attention: Surety Department, including but not limited to the following events:

    A.  Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) is in default on any BOND(s) and/or CONTRACT(s) or has failed or refused to perform any CONTRACT(s);

    B.  Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) cure its performance or show cause as to the reason(s) PRINCIPAL(s) should not be terminated or defaulted on any BOND(s) or CONTRACT(s); and

    C.  Notice by obligee that there has been a material change in the CONTRACT(s) in connection with the scope of work, the contract amount, the time or method for completion of such CONTRACT(s).

## CONSENT TO CHANGES

**TWENTY THIRD:** SURETY is authorized, without notice to or knowledge of PRINCIPAL(s) or INDEMNITOR(s), to assent to any change whatsoever in any BOND(s) and any CONTRACT(s) including, but not limited to, any change in the time for completion of CONTRACT(s) and for payments or advances thereunder, to assent to or to take any assignment or assignments, to execute or consent to execution of any continuations, extensions, renewals, enlargements, modifications, changes or alterations of any BOND(s) and to execute any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger penalties, and PRINCIPAL(s) and INDEMNITOR(s) shall remain bound under the terms of this AGREEMENT even though any such assent by SURETY does or may substantially increase the liability of PRINCIPAL(s) and INDEMNITOR(s).

## SUBORDINATION OF INDEMNITORS

**TWENTY FOURTH:** PRINCIPAL(s) and INDEMNITOR(s) waive and subordinate all rights of indemnity, subrogation and contribution of each against the other until all obligations to SURETY under this AGREEMENT, at law or in equity, have been fully satisfied.

## ELECTION OF REMEDIES

**TWENTY FIFTH:** All rights and remedies of SURETY under this AGREEMENT shall be cumulative, and the exercise of or failure to exercise, any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of SURETY to pursue any remedy against any one or more of PRINCIPAL(s) and INDEMNITOR(s) shall not release or waive any right against any other of the PRINCIPAL(s) and/or INDEMNITOR(s).

## OTHER INDEMNITY

**TWENTY SIXTH:** The rights, powers and remedies given to SURETY by this AGREEMENT shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which SURETY may have or acquire against PRINCIPAL(s) and INDEMNITOR(s) or others whether by the terms of any other agreement, by operation of law or otherwise.

PRINCIPAL(s) and INDEMNITOR(s) shall continue to remain bound under this AGREEMENT even though SURETY may have, at any time either prior to or after the execution of this AGREEMENT, with or without knowledge of PRINCIPAL(s) and INDEMNITOR(s), accepted or released other agreements of indemnity from PRINCIAFL(s), INDEMNITOR(s) or others or released collateral held in connection with the execution of BOND(s) or other policies of insurance.

## PARTIAL INVALIDITY OR EXECUTION

**TWENTY SEVENTH:** If any of the persons named herein as PRINCIPAL(s) and INDEMNITOR(s) fails to execute this AGREEMENT or if the execution hereof by any of the PRINCIPAL(s) and INDEMNITOR(s) shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other PRINCIPAL(s) and INDEMNITOR(s).

Failure of the PRINCIPAL(s) to sign any BOND(s) shall not relieve the PRINCIPAL(s) and INDEMNITOR(s) of liability under this AGREEMENT.

If any provision or provisions of this AGREEMENT are held to be void or unenforceable under the laws of the place governing its construction or enforcement, this AGREEMENT shall not be void or unenforceable thereby but shall continue in effect and be enforceable as though such provision or provisions were omitted.

## SEPARATE ACTION SETTLEMENT

**TWENTY EIGHTH:** Separate suits may be brought on this AGREEMENT against any and all of the PRINCIPAL(s) and INDEMNITOR(s) and the bringing of the suit or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of another suit or suits at any time.

SURETY is hereby expressly authorized to settle any claim based upon this AGREEMENT with any one or more of PRINCIPAL(s) and/or INDEMNITOR(s) individually, and such settlement or compromise shall not affect the liability of any of the rest of the PRINCIPAL(s) and INDEMNITOR(s).

Contract Indemnity Form (Ed: 05/01/06)

**SET OFF**

**TWENTY NINTH:** SURETY may reduce the amount of PRINCIPAL's and INDEMNITOR's liability to SURETY hereunder by applying to such liability any money payable to PRINCIPAL(s) and/or INDEMNITOR(s) by SURETY. The money payable to PRINCIPAL(s) or INDEMNITOR(s) may be, but is not limited to, any money payable by SURETY as an insurer of PRINCIPAL(s) or INDEMNITOR(s) or as an insurer of any other individual or legal entity, or any money payable to PRINCIPAL(s) or INDEMNITOR(s) as a return of unearned or other premium, or money payable to settle a claim of PRINCIPAL(s) or INDEMNITOR(s) against SURETY or any individual or legal entity insured or bonded by SURETY.

**WAIVER AND MODIFICATION**

**THIRTIETH:** The rights and remedies afforded to SURETY by the terms of this AGREEMENT may not be waived or modified orally and no written change or modification shall be effective until signed by an officer of SURETY.

**TERMINATION**

**THIRTY FIRST:** This is a continuing AGREEMENT which remains in full force and effect until terminated. If PRINCIPAL(s) or INDEMNITOR(s) previously executed a similar agreement of indemnity in favor of SURETY, SURETY's accepting this AGREEMENT neither terminates nor relieves PRINCIPAL(s) or INDEMNITOR(s) from such similar agreements unless terminated in accordance with the terms and conditions of such similar agreements.

This AGREEMENT may be terminated as to PRINCIPAL(s) or any INDEMNITOR(s) upon written notice sent by registered or certified mail to SURETY at its offices at 436 Walnut Street, WA10F, Philadelphia, PA 19106.

Termination of this AGREEMENT shall not be effective until thirty (30) days after receipt of said written notice by SURETY.

Termination of this AGREEMENT shall not relieve PRINCIPAL(s) or INDEMNITOR(s) from liability to SURETY arising out of BOND(s) executed, provided or procured by SURETY on behalf of PRINCIPAL(s) prior to the effective date of such termination.

IN WITNESS WHEREOF, THE UNDERSIGNED has/have executed this AGREEMENT this ___12___ day of ___September___, ___2016___.

PRINCIPAL(s): Interior Partitions, Inc.; Ramshorn Property Management, LLC

By _____     Address 7362 6WN Road, Casper, WY 82604
Name and Title Todd R. Madsen, President

By _____     Address 7362 6WN Road, Casper, WY 82604
Name and Title Todd R. Madsen, Managing Member

By _____     Address _____
Name and Title

By _____     Address _____
Name and Title

INDEMNITOR(s): Todd R. Madsen; Mary K. Madsen

By _____     Address 1440 N Grass Creek Road, Casper, WY 82604
Todd Madsen, Individual

By _____     Address 1440 N Grass Creek Road, Casper, WY 82604
Mary K. Madsen, Individual

By _____     Address _____

By _____     Address _____

By _____     Address _____

By _____     Address _____

By _____     Address _____

By _____     Address _____

Contract Indemnity Form (Ed: 05/01/06)       Page 6 of 8

**FOR NOTARIAL ACKNOWLEDGMENT OF PRINCIPAL(s)/INDEMNITOR(s)**

**CORPORATE/LLC ACKNOWLEDGMENT**

State of _WYOMING_ )
County of _NATRONA_ ) ss:
On this _12_ day of _SEPTEMBER_, 20 _16_, before me personally came _TODD R. MADSEN_ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _PRESIDENT_ of _INTERIOR PRODUCTIONS, INC._, the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_____
(Signature of Notary Public)
My commission expires _____

SHARON J. ZABRISKIE
NOTARY PUBLIC
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires January 9, 2019

**CORPORATE/LLC ACKNOWLEDGMENT**

State of _WYOMING_ )
County of _NATRONA_ ) ss:
On this _12_ day of _SEPTEMBER_, 20 _16_, before me personally came _MARY K. MADSEN_ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _Secretary_ of _INTERIOR PRODUCTIONS, INC._, the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_____
(Signature of Notary Public)
My commission expires _____

SHARON J. ZABRISKIE
NOTARY PUBLIC
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires January 9, 2019

**CORPORATE/LLC ACKNOWLEDGMENT**

State of _WYOMING_ )
County of _NATRONA_ ) ss:
On this _12_ day of _SEPTEMBER_, 20 _16_, before me personally came _TODD R. MADSEN_ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _MANAGING MEMBER of RUNNING W PROP MGMT._, the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_____
(Signature of Notary Public)
My commission expires _____

SHARON J. ZABRISKIE
NOTARY PUBLIC
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires January 9, 2019

**CORPORATE/LLC ACKNOWLEDGMENT**

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20____, before me personally came _____ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _____ of _____, the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_____
(Signature of Notary Public)
My commission expires _____

**PARTNERSHIP ACKNOWLEDGMENT**

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20____, before me personally comes _____ a member of the co-partnership of _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same as and for the act and deed of the said co-partnership.

_____
(Signature of Notary Public)
My commission expires _____

**PARTNERSHIP ACKNOWLEDGMENT**

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20____, before me personally comes _____ a member of the co-partnership of _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same as and for the act and deed of the said co-partnership.

_____
(Signature of Notary Public)
My commission expires _____

Page 7 of 8

Contract Indemnity Form (Ed: 05/01/06)

**INDIVIDUAL ACKNOWLEDGMENT**

State of _WYOMING_ )
County of _NATRONA_ ) ss:
    On this _12_ day of _SEPTEMBER_, 20_16_, before me personally came _TOBY R. MADSEN_ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _JAN 9, 2019_

SHARON J. ZABRISKIE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires January 9, 2019

**INDIVIDUAL ACKNOWLEDGMENT**

State of _WYOMING_ )
County of _NATRONA_ ) ss:
    On this _12_ day of _SEPTEMBER_, 20_16_, before me personally came _MARY K. MADSEN_ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _Jan 9, 2019_

NOTARY PUBLIC
SHARON J. ZABRISKIE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires January 9, 2019

**INDIVIDUAL ACKNOWLEDGMENT**

State of _____ )
County of _____ ) ss:
    On this _____ day of _____, 20___, before me personally came _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____

**INDIVIDUAL ACKNOWLEDGMENT**

State of _____ )
County of _____ ) ss:
    On this _____ day of _____, 20___, before me personally came _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____

**INDIVIDUAL ACKNOWLEDGMENT**

State of _____ )
County of _____ ) ss:
    On this _____ day of _____, 20___, before me personally came _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____

**INDIVIDUAL ACKNOWLEDGMENT**

State of _____ )
County of _____ ) ss:
    On this _____ day of _____, 20___, before me personally came _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____

Contract Indemnity Form (Ed: 05/01/96)

Page 8 of 8



## AGREEMENT OF INDEMNITY

This Agreement of Indemnity ("AGREEMENT"), is made and entered into by the following individuals, partnerships and/or corporations
**INTERIOR PARTITIONS, INC.**

**RAMSHORN PROPERTY MANAGEMENT, LLC**

as PRINCIPAL(s) and

| INDEMNITOR(s) | Social Security or EIN Number | Mailing Address |
|---|---|---|
| TODD R. MADSEN | | 1440 N GRASS CREEK    CASPER, WY 82604 |
| MARY K. MADSEN | | 1440 N GRASS CREEK    CASPER, WY 82604 |

as INDEMNITOR(s) and Westchester Fire Insurance Company, as SURETY.

### WITNESSETH

WHEREAS, PRINCIPAL(s), in the performance of contracts and the fulfillment of obligations generally, whether solely in its own name or as co-venturer with others, may desire, or be required to give or procure certain BOND(s), and to renew, or continue or substitute the same from time to time with the same or different BOND amounts, and/or conditions or to refrain from canceling said BOND(s);

WHEREAS, at the request of PRINCIPAL(s) and/or INDEMNITOR(s) or both and upon the express understanding that this AGREEMENT should be given, SURETY has executed or caused to be executed, and may from time to time hereafter execute or cause to be executed, said BOND(s) on behalf of the PRINCIPAL(s);

WHEREAS, PRINCIPAL(s) and INDEMNITOR(s) have a substantial, material and beneficial interest in the obtaining, renewing, continuing or substituting of BOND(s); and

WHEREAS, SURETY has relied upon and will continue to rely upon the representations of PRINCIPAL(s) and INDEMNITOR(s) as to their character, identity, control, beneficial and legal ownership, financial condition and existence in procuring or executing BOND(s).

NOW THEREFORE, in consideration of the above stated premises, and of other good and valuable consideration, the receipt of which is hereby acknowledged, PRINCIPAL(s) and INDEMNITOR(s) for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with SURETY, its successors and assigns, as follows:

### DEFINITIONS

FIRST:    Where they appear in this AGREEMENT and any addenda hereto, the following terms are defined as set forth in this paragraph:

"BOND(s)" means an undertaking or a contract of suretyship, guaranty or indemnity, or an agreement, consent or letter to provide such an undertaking or contract, and the continuation, extension, alteration, renewal or substitution of such an undertaking, contract, agreement, consent or letter, whether with the same or different amounts or conditions, executed or procured by SURETY before or after the date of this AGREEMENT (excluding at the option of SURETY any BOND(s) which are written by SURETY in reliance upon another valid and enforceable agreement of indemnity in favor of SURETY).

"CONTRACT(s)" means an agreement executed between PRINCIPAL(s) and a third party, together with all associated documents (including, but not limited to, general and special conditions, specifications and drawings) or an undertaking made, obligation or duty assumed, either statutory or otherwise, for which SURETY executes or procures the execution of a BOND(s).

"EVENT OF DEFAULT" means any one or more of the following:

A.    Any notice of default by an obligee on any BOND(s) due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any CONTRACT or obligation contained therein or in the BOND(s) itself, whether actual or alleged;

B.    Any failure, delay, refusal or inability of PRINCIPAL(s) to pay claims, bills or other indebtedness incurred in, or in connection with the performance of any CONTRACT;

C.    The failure to perform, or comply with the terms, covenants or obligations in this AGREEMENT;

D.    The failure to pay or discharge, when due, all indebtedness of PRINCIPAL(s) and/or INDEMNITOR(s) to SURETY;

E.    An assignment by PRINCIPAL(s) for the benefit of creditors, or the appointment or an application by PRINCIPAL(s) for the appointment of a receiver or trustee for PRINCIPAL(s) or its property, solvent or not, or if proceedings for the appointment of a receiver or trustee for liquidation, reorganization or arrangement of PRINCIPAL(s) shall be initiated by others;

F.    If PRINCIPAL or INDEMNITOR is an individual, the death, disappearance, declaration of incompetence, conviction of a felony, imprisonment or, if PRINCIPAL(s) and/or INDEMNITOR(s) is not an individual, any change in character, identity, control, arrangement, legal or beneficial ownership or existence of such PRINCIPAL(s) and/or INDEMNITOR(s);

G.    Any proceeding or the exercise of any rights by any individual or entity which deprives or impairs the PRINCIPAL's use of its plant, machinery, equipment, plan, drawings, tools, supplies or materials;

Page 1 of 8

Contract Indemnity Form (Ed1 05/01/06)

H.   In the event that CONTRACT(s), or any portion thereof, relates to the development of real property or construction of improvements upon real property: (I) the failure of PRINCIPAL(s) to pay for labor and materials ordered or used in connection with such development or construction of improvements; (II) the diversion or non-use by PRINCIPAL(s) of loan funds, equity funds or materials intended by any lender, equity contributor or supplier of such funds or materials to be used and which are needed to perform the CONTRACT(s); or (III) the voluntary or involuntary cessation or suspension of work required to be performed by PRINCIPAL(s) in connection with the CONTRACT(s);

I.   The failure of PRINCIPAL(s), INDEMNITOR(s) to promptly furnish accurate, complete and current financial statements upon request of SURETY or the furnishing of a financial statement which contains any material misstatement or misrepresentation whether intentional or unintentional;

J.   Any suspension, revocation or other material adverse change in the status of any license of PRINCIPAL(s) with any applicable licensing board or agency that is required to perform the CONTRACT(s) or discharge any obligation under any BOND(s); and

K.   The occurrence of any event other than specified in A. through J. herein which, in the SURETY's sole opinion, may expose SURETY to loss, cost or expense including, but not limited to, a material adverse change in the financial condition of the PRINCIPAL(s) and/or INDEMNITOR(s).

"PRINCIPAL(s)" means any individual or entity for which SURETY executes BOND(s) including any one, combination of, or all of the named individuals, partnerships, or firms or corporation set forth above, any of their present or future subsidiaries, affiliates, whether a corporation, partnership or other entity, their successors in interest, whether acting alone or in joint venture with others not named herein, including any such individual or entity for which SURETY executes BOND(s) or any unrelated individual or entity for which SURETY executes BOND(s) at the request of any INDEMNITOR(s).

"SURETY" means Westchester Fire Insurance Company and its successors, assigns, affiliates, associates and subsidiary companies.

## NOTICE TO SURETY OF ANTICIPATED CHANGE IN NATURE OF PRINCIPAL(s)/INDEMNITOR(s)

SECOND: Written notice must be given by PRINCIPAL(s) and/or INDEMNITOR(s) at the earliest practical time of any anticipated change or negotiations entered into by PRINCIPAL(s) or INDEMNITOR(s) for any anticipated change in the character or identity of PRINCIPAL(s) or INDEMNITOR(s), or of a change of 5% or more in the beneficial or legal ownership of the stock of PRINCIPAL(s) and/or INDEMNITOR(s). Upon receipt of said notice, SURETY shall have the right to examine the books and records and other documents and information pursuant to the Sixteenth paragraph hereof.

## INDEMNITY AND HOLD HARMLESS

THIRD:   PRINCIPAL(s) and INDEMNITOR(s) shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which SURETY may sustain or incur by reason of or in consequence of the:

A.   Execution or procurement of the execution of BOND(s);
B.   Failure by PRINCIPAL(s) or INDEMNITOR(s) to perform or comply with any of the covenants or conditions of this AGREEMENT;
C.   Any Event of Default herein;
D.   Enforcement of any covenant of this AGREEMENT;
E.   Performance of any investigation, attempt or attainment of any release in connection with any BOND(s) or any loss or unpaid premium in connection with any BOND(s);
F.   Prosecution or defense of any action or claim in connection with any BOND(s), whether SURETY, at its own discretion, elects to employ counsel of its own selection or permits or requires PRINCIPAL(s) or INDEMNITOR(s) to make arrangements for SURETY's legal representation; and
G.   Attempt to recover losses or expenses paid or incurred in connection with this AGREEMENT, CONTRACT(s) and/or BOND(s).

Payment shall be made to SURETY by the PRINCIPAL(s) and/or INDEMNITOR(s) as soon as liability exists or is asserted against SURETY, whether or not SURETY shall have made any payment therefore. Such payment shall be equal to whatever amount SURETY, in its judgment, shall deem sufficient to protect it from loss. SURETY shall have the right to use the payment or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT.

In the event of payment by SURETY, SURETY shall be entitled in any accounting with PRINCIPAL(s) or INDEMNITOR(s) to reimbursement for any and all disbursements made by it in good faith in and about the matters contemplated by this AGREEMENT under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of any such payments made by SURETY shall be prima facie evidence of the fact and amount of liability to SURETY. PRINCIPAL(s) and INDEMNITOR(s) shall pay to SURETY interest on all disbursements made by SURETY at the maximum rate permitted by law calculated from the date of each disbursement.

## RESERVE-DEPOSIT

FOURTH:   If for any reason the SURETY shall deem it necessary to establish or to increase a reserve to cover any possible liability or loss for which the PRINCIPAL(s) and INDEMNITOR(s) will be obligated to indemnify SURETY under the terms of this AGREEMENT, PRINCIPAL(s) and INDEMNITOR(s) will deposit with SURETY, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to SURETY for such liability or loss.

SURETY shall have the right to use such deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT. SURETY shall have no obligation to invest, or to provide a return on the deposit. PRINCIPAL(s) and INDEMNITOR(S) shall be entitled to the return of any unused portion of the deposit upon termination of the liability of SURETY on the BOND(s) and the performance by PRINCIPAL(s) and INDEMNITOR(s) under the terms of this AGREEMENT.

SURETY's demand shall be sufficient if sent by REGISTERED or CERTIFIED MAIL to the PRINCIPAL(s) and INDEMNITOR(s) at the addresses stated herein, or at the addresses last known to SURETY, whether or not such demand is actually received.

## ADVANCES

FIFTH:   INDEMNITOR(s) hereby authorize and empower SURETY, within SURETY's sole discretion, to guarantee loans, extend SURETY credit, advance, or to lend PRINCIPAL(s) any money, which SURETY may see fit for the purpose of completing CONTRACT(s) or discharging obligations under BOND(s) including such overhead as might be necessary and all such guarantees, credit, advances or loans as well as all costs and expenses incurred by SURETY in relation thereto shall be presumed to be a loss for which PRINCIPAL(s) and INDEMNITOR(s) shall be responsible under this AGREEMENT, notwithstanding that said money or any part thereof should not be used by PRINCIPAL(s).

## TRUST FUND

**SIXTH:** All payments received for or on account of any CONTRACT(s) shall be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any CONTRACT(s) and for labor, materials, and services furnished in the prosecution of the work under any CONTRACT(s) or any extensions or modifications thereto. All monies due and to become due under any CONTRACT(s) are also trust funds, whether in the possession of PRINCIPAL(s), INDEMNITOR(s) or otherwise. The trust funds shall be for the benefit and payment of all obligations for which SURETY may be liable under any BOND(s). The trust funds shall inure to the benefit of SURETY for any liability or loss it may have or sustain under any BOND(s), and this AGREEMENT and declaration constitute notice of such trust. The trust funds, unless otherwise restricted or regulated by state or local laws, can be commingled with other funds, but the trust fund nature and purpose as stated in this paragraph shall not be modified nor waived by this commingling provision.

## FUNDS CONTROL

**SEVENTH:** Upon demand by SURETY, PRINCIPAL(s) shall implement the trust or trusts provided for in the SIXTH paragraph of this AGREEMENT by the creation of an account or accounts with a bank or similar depository designated by SURETY, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received for or an account of any CONTRACT(s). Withdrawals from such accounts shall be by check or similar instrument signed by a representative of SURETY. Said trust shall terminate on the payment of all the obligations under the CONTRACT(s) for which the account was created.

## ASSIGNMENT

**EIGHTH:** With respect to each BOND(s) executed by SURETY, PRINCIPAL(s) (with INDEMNITOR(s) hereby consenting), assigns, transfers and conveys to SURETY but subject to the trust created herein:

    A.   All monies due or to become due to PRINCIPAL(s) arising out of or in any way related to CONTRACT(s) covered by BOND(s), including but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work, undisbursed loan funds, deposit or reserve accounts, and all collateral pledged by PRINCIPAL(s) and INDEMNITOR(s) to third parties in connection with the CONTRACT(s) or BOND(s);

    B.   All of the rights of PRINCIPAL(s) in, or arising in any manner out of, all CONTRACT(s) or BOND(s);

    C.   All of the rights, title and interest of the PRINCIPAL(s) in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the work under CONTRACT(s) or BOND(s) or elsewhere, including materials purchased for or chargeable to any and all such CONTRACT(s) or BOND(s), which may be in the process of manufacture or construction, in storage elsewhere, or in transportation to any and all of said sites;

    D.   All of the rights, title and interest of the PRINCIPAL(s) in and to all subcontracts let or to be let in connection with CONTRACT(s) or BOND(s), and in and to all SURETY bonds in favor of PRINCIPAL(s) as obligee relating to such CONTRACT(s) or BOND(s);

    E.   All of the rights, title and interest of PRINCIPAL(s) in and to any actions, causes of action, claims, demands or proceeds of such actions, causes of action, claims or demands whatsoever which PRINCIPAL(s) may have or acquire against any party in connection with the CONTRACT(s) including but not limited to those against obligees on BOND(s) design professionals, subcontractors, laborers or materialmen or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, inventory or other equipment in connection with or an account of any CONTRACT(s) and against any SURETY or sureties of any obligee, subcontractor, laborer, or materialmen;

    F.   All monies due or to become due to PRINCIPAL(s) or INDEMNITOR(s) on any policy of insurance relating to any claims or suits arising out of CONTRACT(s) or BOND(s) including, but not limited to, claims or suits under builders risk, fire or employee dishonesty policies, including premium refunds;

    G.   Any and all rights, title and interest in or use of any patent, copyright or trade secret which is or may be necessary for completion of CONTRACT(s); and

    H.   The above assignment rights are in addition to and not in substitution of any other rights of SURETY arising by operation of law or otherwise.

The above assignments shall become effective as of the date of this AGREEMENT or the date of the BOND(s) whichever occurs first. SURETY agrees to forbear exercising the rights granted to it under this Eighth paragraph until the occurrence of an EVENT OF DEFAULT. Upon the occurrence of an EVENT OF DEFAULT, PRINCIPAL(s) authorizes and empowers SURETY, or any person or persons designated by SURETY, to execute in the name of PRINCIPAL(s) any instruments deemed necessary or desirable by SURETY to provide absolute title to SURETY of any funds, property and rights as are hereby assigned, transferred or conveyed, and PRINCIPAL(s) hereby authorizes SURETY or any person or persons designated by SURETY to take immediate possession of such funds, property and rights, to collect such sums as may be due and to endorse, in the name of the PRINCIPAL(s) and to collect any checks, drafts, warrants and or other instruments made and issued in payment of such sums.

SURETY is authorized to assert and prosecute any right or claim assigned in this AGREEMENT in the name of PRINCIPAL(s) and to compromise and settle such right or claim on such terms as it considers reasonable.

SURETY may sell any property assigned to it pursuant to this AGREEMENT at public or private sale, with or without notice, at any time or place, without incurring liability of any kind to PRINCIPAL(s) or INDEMNITOR(s).

## SETTLEMENTS

**NINTH:** SURETY shall have the exclusive right in its name or in the name of PRINCIPAL(s) or INDEMNITOR(s) to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any BOND(s) or to take whatever action it may deem necessary, expedient or appropriate. SURETY's determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled shall be binding and conclusive upon PRINCIPAL(s) and INDEMNITOR(s). The vouchers or other evidence of any such payments made by SURETY shall constitute prima facie evidence of the fact and amount of liability of PRINCIPAL(s) and INDEMNITOR(s) to SURETY.

## PERFECTION OF SECURITY INTEREST

**TENTH:** This AGREEMENT shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this AGREEMENT describing specific items of collateral covered hereunder as shall be necessary. For the purpose of recording this AGREEMENT, a photocopy of this AGREEMENT acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original.

Contract Indemnity Form (Ed: 05/01/06)

## ATTORNEY-IN-FACT

**ELEVENTH:** PRINCIPAL(s) and INDEMNITOR(s) hereby irrevocably nominate, constitute designate and appoint SURETY or any person or persons designated by SURETY as attorney in fact with the right to exercise all of the rights assigned, transferred and set over to SURETY by this AGREEMENT including but not limited to Financing Statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPAL(s) and/or INDEMNITOR(s) under CONTRACT(s) and to execute and deliver any and all additional instruments or documents deemed necessary or desirable by SURETY:

    A.   To vest in SURETY absolute title to any and all monies, property and rights hereby assigned, and

    B.   To provide the protection and rights to SURETY contemplated by all of the provisions of this AGREEMENT.

PRINCIPAL(s) and INDEMNITOR(s) hereby ratify and confirm all acts and actions taken and done by SURETY as such Attorney-in-Fact.

## TAKEOVER

**TWELFTH:** Upon occurrence of any EVENT OF DEFAULT, SURETY, at its discretion, shall have the right, but not the obligation conferred upon it by law or by the terms of this AGREEMENT, to take possession of any part or all of the work under CONTRACT(s), at the expense of PRINCIPAL(s) and INDEMNITOR(s), to complete or arrange for completion of the work, and to take such steps which, at its discretion, SURETY may deem advisable or necessary to obtain SURETY's release or to avoid or mitigate loss.

In the event that the CONTRACT(s) and/or BOND(s) relate to the performance of a subdivision agreement between PRINCIPAL(s) and a public entity, and an EVENT OF DEFAULT occurs, SURETY shall have the right, but not the obligation, to revert to acreage the real property which is the subject of the subdivision improvement agreement.

## DECLINATION OF SURETYSHIP

**THIRTEENTH:** SURETY may decline to execute any BOND(s) applied for and the PRINCIPAL(s) and INDEMNITOR(s) shall have no cause of action against SURETY in consequence of its failure to execute any BOND(s). If SURETY executes or provides a bid bond or proposal bond, SURETY retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid or proposal. Evidence of custom and usage will have no bearing on SURETY's right to decline suretyship under this paragraph.

## NOTICE OF EXECUTION

**FOURTEENTH:** INDEMNITOR(s) hereby waive notice of the execution of any BOND(s) and of the acceptance of this AGREEMENT by SURETY.  PRINCIPAL(s) and INDEMNITOR(s) hereby waive all notice of any default, or any other act or acts giving rise to any claim under said BOND(s), as well as notice of any and all liability of SURETY under said BOND(s). PRINCIPAL(s) and INDEMNITOR(s) shall continue to be bound under this AGREEMENT, notwithstanding lack of notice to which they may have been otherwise entitled and notwithstanding any defenses that they would have been entitled to raise.

## RIGHT TO INFORMATION

**FIFTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will furnish SURETY such information as it may request from time to time concerning the financial condition of PRINCIPAL(s) and INDEMNITOR(s), the status of work under any CONTRACT(s), and/or the payment of obligations in connection therewith.

## BOOKS AND RECORDS

**SIXTEENTH:** At any time during this AGREEMENT and until such time as the liability of SURETY under all BOND(s) is terminated and SURETY is fully reimbursed all amounts due under this AGREEMENT, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPAL(s) and INDEMNITOR(s), wherever located, for the purpose of inspection, copying or reproduction. Any financial institution, depository, warehouse, supply house, or other person, firm or corporation, when requested by SURETY, is hereby authorized and required to furnish SURETY any and all information requested including, but not limited to: (i) the status of the work under any CONTRACT(s) being performed by PRINCIPAL(s); (ii) the condition of performance of any CONTRACT(s); (iii) payments or pending payments of accounts including undisbursed loan proceeds; and (iv) full information about all bank accounts and loans and any collateral deposited in connection therewith. Upon SURETY's request, PRINCIPAL(S) and INDEMNITOR(s) shall immediately deliver to SURETY, or its designee, at a time and place and in a manner determined by SURETY, such books, records, accounts, documents, computer software and other computer stored information, and contracts in whatever form, as and when requested by SURETY.

## PREMIUMS

**SEVENTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) shall pay all premiums and charges of SURETY for the BOND(s) and for all policies of insurance whether procured from SURETY or from other insurance companies until PRINCIPAL(s) and INDEMNITOR(s) shall serve evidence satisfactory to SURETY of its discharge or release from all BOND(s) and all liability by reason thereof. The failure of PRINCIPAL(s) or INDEMNITOR(s) to pay premiums shall not constitute a defense to an action under this AGREEMENT.

## DISCHARGE FROM SURETYSHIP

**EIGHTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will, upon request of SURETY, take action to procure the discharge of SURETY from any BOND(s) and from any liability thereof. SURETY may, at any time take such action as it deems necessary or proper to obtain its release from any and all liability under any BOND(s). Upon discharge or release, SURETY shall return to PRINCIPAL(s) any portion of premium paid which is unearned as a result of such discharge provided that PRINCIPAL(s) is not indebted to SURETY for any other reason.

## SURETYSHIP COVERED

**NINETEENTH:** This AGREEMENT applies to all BOND(s) executed or procured by SURETY for the PRINCIPAL(s) in his own name or as co-venturer with others, whether prior to or subsequent to the execution and delivery of this AGREEMENT and from time to time until this AGREEMENT is terminated in accordance with its terms.

**PROTECTION OF OTHER SURETIES**

**TWENTIETH:** If SURETY procures the execution of any BOND(s) by other sureties or executes the BOND(s) with co-sureties, or reinsures any portion of said BOND(s) with reinsuring sureties, then all the terms and conditions of this AGREEMENT shall inure to the benefit, as their interests may appear, of such other sureties, co-sureties and reinsurers who shall have the right to maintain an action or actions on this AGREEMENT to enforce their rights hereunder.

**WAIVER OF HOMESTEAD RIGHT**

**TWENTY FIRST:** PRINCIPAL(s) and/or INDEMNITOR(s) waive, so far as their respective obligations under this AGREEMENT are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution or sale or other legal process under the laws of any state, territory or possession of the United States.

**NOTICE TO SURETY**

**TWENTY SECOND:** PRINCIPAL(s) and INDEMNITOR(s) shall promptly provide all written notices to SURETY required in this AGREEMENT at 436 Walnut Street, WA10F, Philadelphia PA 19106, Attention: Surety Department, including but not limited to the following events:

A.  Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) is in default on any BOND(s) and/or CONTRACT(s) or has failed or refused to perform any CONTRACT(s);
B.  Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) cure its performance or show cause as to the reason(s) PRINCIPAL(s) should not be terminated or defaulted on any BOND(s) or CONTRACT(s); and
C.  Notice by obligee that there has been a material change in the CONTRACT(s) in connection with the scope of work, the contract amount, the time or method for completion of such CONTRACT(s).

**CONSENT TO CHANGES**

**TWENTY THIRD:** SURETY is authorized, without notice to or knowledge of PRINCIPAL(s) or INDEMNITOR(s), to assent to any change whatsoever in any BOND(s) and any CONTRACT(s) including, but not limited to, any change in the time for completion of CONTRACT(s) and for payments or advances thereunder, to assent to or to take any assignment or assignments, to execute or consent to execution of any continuations, extensions, renewals, enlargements, modifications, changes or alterations of any BOND(s) and to execute any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger penalties, and PRINCIPAL(s) and INDEMNITOR(s) shall remain bound under the terms of this AGREEMENT even though any such assent by SURETY does or may substantially increase the liability of PRINCIPAL(s) and INDEMNITOR(s).

**SUBORDINATION OF INDEMNITORS**

**TWENTY FOURTH:** PRINCIPAL(s) and INDEMNITOR(s) waive and subordinate all rights of indemnity, subrogation and contribution of each against the other until all obligations to SURETY under this AGREEMENT, at law or in equity, have been fully satisfied.

**ELECTION OF REMEDIES**

**TWENTY FIFTH:** All rights and remedies of SURETY under this AGREEMENT shall be cumulative, and the exercise of or failure to exercise, any right or remedy at anytime shall not be an election of remedy or a waiver of any other right or remedy. Failure of SURETY to pursue any remedy against any one or more of PRINCIPAL(s) and INDEMNITOR(s) shall not release or waive any right against any other of the PRINCIPAL(s) and/or INDEMNITOR(s).

**OTHER INDEMNITY**

**TWENTY SIXTH:** The rights, powers and remedies given to SURETY by this AGREEMENT shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which SURETY may have or acquire against PRINCIPAL(s) and INDEMNITOR(s) or others whether by the terms of any other agreement, by operation of law or otherwise.

PRINCIPAL(s) and INDEMNITOR(s) shall continue to remain bound under this AGREEMENT even though SURETY may have, at any time either prior to or after the execution of this AGREEMENT, with or without knowledge of PRINCIPAL(s) and INDEMNITOR(s), accepted or released other agreements of indemnity from PRINCIPAL(s), INDEMNITOR(s) or others or released collateral held in connection with the execution of BOND(s) or other policies of insurance.

**PARTIAL INVALIDITY OR EXECUTION**

**TWENTY SEVENTH:** If any of the persons named herein as PRINCIPAL(s) and INDEMNITOR(s) fails to execute this AGREEMENT or if the execution hereof by any of the PRINCIPAL(s) and INDEMNITOR(s) shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other PRINCIPAL(s) and INDEMNITOR(s).

Failure of the PRINCIPAL(s) to sign any BOND(s) shall not relieve the PRINCIPAL(s) and INDEMNITOR(s) of liability under this AGREEMENT.

If any provision or provisions of this AGREEMENT are held to be void or unenforceable under the laws of the place governing its construction or enforcement, this AGREEMENT shall not be void or unenforceable thereby but shall continue in effect and be enforceable as though such provision or provisions were omitted.

**SEPARATE ACTION SETTLEMENT**

**TWENTY EIGHTH:** Separate suits may be brought on this AGREEMENT against any and all of the PRINCIPAL(s) and INDEMNITOR(s) and the bringing of the suit or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of another suit or suits at any time.

SURETY is hereby expressly authorized to settle any claim based upon this AGREEMENT with any one or more of PRINCIPAL(s) and/or INDEMNITOR(s) individually, and such settlement or compromise shall not affect the liability of any of the rest of the PRINCIPAL(s) and INDEMNITOR(s).

**SET OFF**

**TWENTY NINTH:** SURETY may reduce the amount of PRINCIPAL's and INDEMNITOR's liability to SURETY hereunder by applying to such liability any money payable to PRINCIPAL(s) and/or INDEMNITOR(s) by SURETY. The money payable to PRINCIPAL(s) or INDEMNITOR(s) may be, but is not limited to, any money payable by SURETY as an insurer of PRINCIPAL(s) or INDEMNITOR(s) or as an insurer of any other individual or legal entity, or any money payable to PRINCIPAL(s) or INDEMNITOR(s) as a return of unearned or other premium, or money payable to settle a claim of PRINCIPAL(s) or INDEMNITOR(s) against SURETY or any individual or legal entity insured or bonded by SURETY.

**WAIVER AND MODIFICATION**

**THIRTIETH:** The rights and remedies afforded to SURETY by the terms of this AGREEMENT may not be waived or modified orally and no written change or modification shall be effective until signed by an officer of SURETY.

**TERMINATION**

**THIRTY FIRST:** This is a continuing AGREEMENT which remains in full force and effect until terminated. If PRINCIPAL(s) or INDEMNITOR(s) previously executed a similar agreement of indemnity in favor of SURETY, SURETY's accepting this AGREEMENT neither terminates nor relieves PRINCIPAL(s) or INDEMNITOR(s) from such similar agreements unless terminated in accordance with the terms and conditions of such similar agreements.

This AGREEMENT may be terminated as to PRINCIPAL(s) or any INDEMNITOR(s) upon written notice sent by registered or certified mail to SURETY at its offices at 436 Walnut Street, WA10F, Philadelphia, PA 19106.

Termination of this AGREEMENT shall not be effective until thirty (30) days after receipt of said written notice by SURETY.

Termination of this AGREEMENT shall not relieve PRINCIPAL(s) or INDEMNITOR(s) from liability to SURETY arising out of BOND(s) executed, provided or procured by SURETY on behalf of PRINCIPAL(s) prior to the effective date of such termination.

IN WITNESS WHEREOF, THE UNDERSIGNED has/have executed this AGREEMENT this _29th_ day of _September_, 20_16_.

PRINCIPAL(s):   INTERIOR PARTITIONS, INC.;   RAMSHORN PROPERTY MANAGEMENT, LLC

By _____     Address   7382  6WN ROAD,  CASPER, WY  82604
Name and Title  TODD R. MADSEN, PRESIDENT

By _____     Address   7382  6WN ROAD, CASPER, WY  82604
Name and Title  TODD R. MADSEN, MANAGING MEMBER

By _____     Address _____
Name and Title

By _____     Address _____
Name and Title

INDEMNITOR(s):   TODD R. MADSEN; MARY K. MADSEN

By _____     Address   1440 N GRASS CREEK ROAD, CASPER, WY  82604
TODD R. MADSEN, INDIVIDUAL

By _____     Address   1440 N GRASS CREEK ROAD, CASPER, WY  82604
MARY K. MADSEN, INDIVIDUAL

By _____     Address _____

By _____     Address _____

By _____     Address _____

By _____     Address _____

By _____     Address _____

By _____     Address _____

Contract Indemnity Form (Ed: 05/01/05)                 Page 6 of 8

FOR NOTARIAL ACKNOWLEDGMENT OF PRINCIPAL(s)/INDEMNITOR(s)

## CORPORATE/LLC ACKNOWLEDGMENT

State of __WYOMING__ )
County of __NATRONA__ ) ss:
    On this __29th__ day of __September__ , 20 _16_ , before me personally came    **TODD R. MADSEN** _____ to me known, who being by me duly sworn, deposed and says that (he)(she) is the PRESIDENT   of   **INTERIOR PARTITIONS, INC.** _____ , the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

(Signature of Notary Public)
My commission _____

**NOTARY PUBLIC**
**SHARON J. ZABRISKIE**
**STATE OF WYOMING**
**COUNTY OF NATRONA**
**My Commission Expires January 9, 2019**

## CORPORATE/LLC ACKNOWLEDGMENT

State of __WYOMING__ )
County of __NATRONA__ ) ss:
    On this __29th__ day of __September__ , 20 _16_ , before me personally came    **TODD R. MADSEN** _____ to me known, who being by me duly sworn, deposed and says that (he)(she) is the MANAGING MEMBER    **RAMSHORN PROPERTY MANAGEMENT, LLC** _____ , the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

(Signature of Notary Public)
My commission _____

**NOTARY PUBLIC**
**SHARON J. ZABRISKIE**
**STATE OF WYOMING**
**COUNTY OF NATRONA**
**My Commission Expires January 9, 2019**

## CORPORATE/LLC ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
    On this _____ day of _____ , 20___ , before me personally came _____ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _____ of _____ , the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

(Signature of Notary Public)
My commission expires _____

## CORPORATE/LLC ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
    On this _____ day of _____ , 20___ , before me personally came _____ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _____ of _____ , the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

(Signature of Notary Public)
My commission expires _____

## PARTNERSHIP ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
    On this _____ day of _____ , 20___ , before me personally comes _____ member of the co-partnership of _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same as and for the act and deed of the said co-partnership.

(Signature of Notary Public)
My commission expires _____

## PARTNERSHIP ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
    On this _____ day of _____ , 20___ , before me personally comes _____ member of the co-partnership of _____ to me known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same as and for the act and deed of the said co-partnership.

(Signature of Notary Public)
My commission expires _____

### INDIVIDUAL ACKNOWLEDGMENT

State of _WYOMING_ )
County of _NATRONA_ ) ss:
On this _29th_ day of _September_, 20_16_, before me personally came    TODD R. MADSEN    to me
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____ 20 _19_

SHARON J. ZABRISKIE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires January 9, 2019

---

### INDIVIDUAL ACKNOWLEDGMENT

State of _WYOMING_ )
County of _NATRONA_ ) ss:
On this _29th_ day of _September_, 20_16_, before me personally came    MARY K. MADSEN    to me
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____ 20 _19_

NOTARY PUBLIC
SHARON J. ZABRISKIE
STATE OF WYOMING
COUNTY OF NATRONA
My Commission Expires January 9, 2019

---

### INDIVIDUAL ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20___, before me personally came _____ to me
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____

---

### INDIVIDUAL ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20___, before me personally came _____ to me
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____

---

### INDIVIDUAL ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20___, before me personally came _____ to me
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____

---

### INDIVIDUAL ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:
On this _____ day of _____, 20___, before me personally came _____ to me
known and known to me to be the person(s) who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same.

_____
(Signature of Notary Public)
My commission expires _____

Contract Indemnity Form (Ed: 05/01/06)